UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ROSS SCHUCKER, EDWARD FRYAR, VIRGILIO VALDEZ, TOM SHAFFER, STEVEN HEINRICH and SHANE BOWER on behalf of themselves and all other employees similarly situated,<br><br>PLAINTIFFS,<br><br>v.<br><br>FLOWERS FOODS, INC., LEPAGE BAKERIES PARK STREET, LLC, C.K. SALES CO., LLC and JOHN DOE 1-10,<br><br>DEFENDANTS. | Case No. 16-cv-3439 (KMK) (PED) |

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS'
MOTION FOR CONDITIONAL CERTIFICATION AND JUDICIAL NOTICE**

## TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

BACKGROUND ................................................................................................................. 4

I.    Flowers Foods, Inc., Lepage Bakeries Park St., LLC, and C.K. Sales Co. ...................... 4

II.   Independent Distributors ................................................................................................ 4

III.  The Plaintiffs' Distributorship Businesses ..................................................................... 6

IV.   Procedural History ......................................................................................................... 8

     A.    *Schucker* Litigation ............................................................................................... 8

     B.    *Neff* and *Carr* Litigation ....................................................................................... 9

ARGUMENT ..................................................................................................................... 10

I.    The Court Should Deny Plaintiffs' Motion for Conditional Certification and
Notice ............................................................................................................................. 10

II.   Plaintiffs' Motion Should be Denied as Duplicative and Unnecessary ........................ 10

III.  Conditional Certification Should be Denied Because Plaintiffs Have Not
Demonstrated They Are Subject to a Common Unlawful Policy Or That They Are
Similarly Situated With Respect To Their Job Requirements ........................................ 12

     A.    Plaintiffs Have Failed To Demonstrate a Common Unlawful Policy .................. 12

     B.    Plaintiffs Cannot Meet Their Burden To Demonstrate They Are Similarly
Situated With Respect to Their Job Requirements ............................................. 16

     C.    Plaintiffs' Reliance on Other Certification Decisions Is Unavailing .................. 20

IV.   Plaintiffs' Proposed Notice and Consent Form are Defective ........................................ 21

V.    The Court Should Deny Plaintiffs' Request to Toll the Statute of Limitations ............... 24

VI.   Plaintiffs Should Not be Permitted to Send Notice Using Email or Text Message
or to Post Notice ............................................................................................................. 25

CONCLUSION ................................................................................................................... 25

## <u>TABLE OF AUTHORITIES</u>

**Page**

C<small>ASES</small>

*7-Eleven, Inc. v. Sodhi,*
    2016 WL 3085897 (D.N.J. May 31, 2016) ....................................................................18, 19

*Alvarez v. Gold Belt, LLC,*
    2009 WL 1473933 (D.N.J. May 26, 2009) ...........................................................................11

*Alvarez v. Gold Belt, LLC,*
    2011 WL 1337457 (D.N.J. Apr. 7, 2011) .............................................................................11

*Anglada v. Linens 'N Things, Inc.,*
    2007 WL 1552511 (S.D.N.Y. Apr. 26, 2007) ......................................................................20

*Brock v. Superior Care, Inc.,*
    840 F.2d 1054 (2d Cir. 1988) ..........................................................................................3, 13

*Browning v. Ceva Freight, LLC,*
    885 F. Supp. 2d 590 (E.D.N.Y. 2012) ................................................................................14

*Cao v. Wu Liang Ye Lexington Rest., Inc.,*
    2010 WL 4159391 (S.D.N.Y. Sept. 30, 2010) ....................................................................24

*Carr et al. v. Flowers Foods, Inc.,*
    2:15-cv-06391 (E.D. Pa.) ................................................................................4, 9, 10, 12

*Castillo v. Taco Bell of Am.,*
    960 F. Supp. 2d 401 (E.D.N.Y. 2013) ................................................................................12

*Demauro v. Limo, Inc.,*
    2011 WL 9191 (M.D. Fla. Jan. 3, 2011) .............................................................................16

*Diaz v. S & H Bondi's Dep't Store,*
    2012 WL 137460 (S.D.N.Y. Jan. 18, 2012) .......................................................................23

*Feng v. Soy Sauce LLC,*
    2016 WL 1070813 (E.D.N.Y. Mar. 14, 2016) ....................................................................22

*Fernandez v. On Time Ready Mix, Inc.,*
    2014 WL 5252170 (E.D.N.Y. Oct. 4, 2014) .......................................................................15

*Foster v. Food Emporium*,
  2000 WL 1737858 (S.D.N.Y. Apr. 26, 2000)........................................................................22

*Garcia v. Pancho Villa's of Huntington Vill., Inc.*,
  678 F. Supp. 2d 89 (E.D.N.Y. 2010) ................................................................................23

*Garcia v. Spectrum of Creations, Inc.*,
  102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015)........................................................................25

*Gonzalez v. Scalinatella, Inc.*,
  2013 WL 6171311 (S.D.N.Y. Nov. 25, 2013)....................................................................25

*Guillen v. Marshalls of MA, Inc.*,
  750 F. Supp. 2d 469 (S.D.N.Y. 2010)...........................................................10, 13, 16, 20

*Gustafson v. Bell Atlantic Corp.*,
  171 F. Supp. 2d 311 (S.D.N.Y. 2001)................................................................................24

*Hamadou v. Hess Corp.*,
  915 F. Supp. 2d 651 (S.D.N.Y. 2013)................................................................................21

*Han v. Sterling Nat'l Mort. Co., Inc.*,
  2011 WL 4344235 (E.D.N.Y. Sept. 14, 2011) ..................................................................25

*Hintergerger v. Catholic Health Sys.*,
  2009 WL 3464134 (W.D.N.Y. Oct. 21, 2009) ..................................................................24

*Hodzic v. Fedex Package Sys., Inc.*,
  2016 WL 6248078 (W.D. Pa. Oct. 26, 2016) ..............................................................20, 21

*Hoffmann-La Roche Inc. v. Sperling*,
  493 U.S. 165 (1989)............................................................................................... passim

*Iglesias-Mendoza v. La Belle Farm, Inc.*,
  239 F.R.D. 363 (S.D.N.Y. 2007) ......................................................................................24

*Jenkins v. TJX Cos. Inc.*,
  853 F. Supp. 2d 317 (E.D.N.Y. 2012) .........................................................................10, 13

*Kahn v. Airport Mgmt. Servs., LLC*,
  2011 WL 5597371 (S.D.N.Y. Nov. 16, 2011)..............................................................13, 15

*Laroque v. Domino's Pizza, LLC*,
  557 F. Supp. 2d 346 (S.D.N.Y. 2008)................................................................................20

*Lujan v. Cabana Mgmt. Inc.*,
  2011 WL 317984 (E.D.N.Y. Feb. 1, 2011)..............................................................21

*Medina v. Bros. Behrman Hwy., Inc.*,
  2015 WL 3679534 (E.D. La. June 12, 2015)...........................................................11

*Michael v. Bloomberg L.P.*,
  2015 WL 1810157 (S.D.N.Y. Apr. 17, 2015)..........................................................25

*Miller v. Int'l Tel. and Tel. Corp.*,
  755 F.2d 20 (2d Cir. 1985)......................................................................................24

*Morales v. Plantworks, Inc.*,
  2006 WL 278154 (S.D.N.Y. Feb. 2, 2006)..............................................................15

*Myers v. Hertz Corp.*,
  624 F.3d 537 (2d Cir. 2010)............................................................................ passim

*Neff et al. v. Flowers Foods, Inc.*,
  No. 5:15-cv-254 (D. Vt.).................................................................................. passim

*Parks v. Eastwood Ins. Servs., Inc.*,
  2002 WL 34370244 (C.D. Cal. July 29, 2002)........................................................25

*Ritz v. Mike Rory Corp.*,
  2013 WL 1799974 (E.D.N.Y. Apr. 30, 2013) .........................................................22

*Rudd v. T.L. Cannon Corp.*,
  2011 WL 831446 (N.D.N.Y. Jan. 4, 2011)..............................................................10

*Sanchez v. El Rancho Sports Bar Corp.*,
  2014 WL 1998236 (S.D.N.Y. May 13, 2014) .........................................................21

*Schwind v. EW & Assocs., Inc.*,
  357 F. Supp. 2d 691 (S.D.N.Y. 2005).....................................................................13

*Scott v. NOW Courier, Inc.*,
  2012 WL 1072751 (S.D. Ind. Mar. 29, 2012)..........................................................16

*Strauch v. Computer Scis. Corp.*,
  2015 WL 4877173 (D. Conn. Aug. 14, 2015) .........................................................24

*Swinney v. Amcomm Telecoms., Inc.*,
  2013 WL 28063 (E.D. Mich. Jan. 2, 2013)..............................................................16

*Velu v. Velocity Exp., Inc.*,
    666 F. Supp. 2d 300 (E.D.N.Y. 2009) ............................................................14, 17

*Witteman v. Wis. Bell, Inc.*,
    2010 WL 446033 (W.D. Wis. Feb. 2, 2010).............................................................23

*Zerilli-Edelglass v. N.Y.C. Transit Auth.*,
    333 F.3d 74 (2d Cir. 2003)......................................................................................24

STATUTES AND REGULATIONS

29 U.S.C. § 255......................................................................................................................21

29 C.F.R. § 541.500...............................................................................................................20

## INTRODUCTION

Defendants Flowers Foods, Inc. ("Flowers") and its subsidiaries, including Defendant Lepage Bakeries Park St., LLC ("Lepage"), manufacture bread and snack products such as the Wonder Bread, Nature's Own, and Tastykake brands.  Defendant C.K. Sales Co., LLC ("C.K. Sales"), a subsidiary of Lepage, contracts with independent distributors who purchase the exclusive rights to sell and distribute certain products to supermarkets, groceries, and chain stores within defined geographic territories.  Because distributors own distribution rights in their territories, as sales grow, distributors can and do build equity in their territories.  In running their businesses, distributors purchase bakery products from C.K. Sales, take title to the products, and then resell the products to customers in their territories – earning profit on the difference between the purchase price and the sale price.  Distributors are free to hire their own workers or employees, carry and distribute non-competing products, and are required by contract to solicit new customers.  Distributors can resell their distribution rights – in whole or in part – at any price they are able to negotiate with third-party buyers.

Plaintiffs Ross Schucker, Edward Fryar, Virgilio Valdez, Tom Shafer, Steven Heinrich and Shane Bower ("Plaintiffs"), current or former independent distributors affiliated with C.K. Sales, allege under the Fair Labor Standards Act ("FLSA") that they were misclassified as independent contractors and, as a result, were improperly denied overtime pay.  (Dkt. 23, ¶¶ 56-67).  Plaintiffs move, pursuant to 29 U.S.C. § 216(b), for conditional certification for the purpose of issuing notice of the right to join the action to independent distributors who worked in the State of New York.  (Motion at 13).[1]  Plaintiffs' Motion should be denied.

---

[1] References to "Motion" are to Plaintiffs' Memorandum of Law in Support of Plaintiffs' Motion for Conditional Certification and Judicial Notice (Dkt. 46).

First, the Motion should be denied because *every* distributor (save for one) in the State of New York – i.e, virtually all distributors in Plaintiffs' proposed collective – very recently received notice of their right to join an FLSA collective action to assert the same claims at issue here.  The distributors received such notice in at least one, if not two, other actions against Flowers and/or Lepage.  The U.S. Supreme Court has said that "district courts have discretion, in *appropriate* cases, to . . . facilitat[e] notice to potential plaintiffs."  *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 169 (1989) (emphasis added).  Notice allows for an "efficient resolution" of FLSA claims by "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action."  *Id.* at 170, 172.  Issuing a second, or even third, notice here would serve no purpose other than to create the very "multiplicity of duplicative suits" notice was intended to avoid.  *Id.*; *see Neff v. Flowers Foods, Inc. et al.*, 15-cv-254 (D. Vt. Nov. 7, 2016) (Dkt. 56, at 7-8) (declining to issue notice to C.K. Sales-affiliated distributors in Maine, who were already the subject of an FLSA notice motion in a separate lawsuit; "[t]here is no good reason for sending overlapping notices inviting the same people to join two lawsuits.").

Second, in any event, Plaintiffs' meager evidence fails to satisfy their burden to demonstrate that notice should issue to all distributors in the State of New York.  Plaintiffs must make a "modest factual showing" of a "common policy or plan that violated the law" and must demonstrate that Plaintiffs and the proposed opt-in plaintiffs are "similarly situated with respect to [the] job requirements. . . on which the criteria for . . . exemption[] are based."  *Myers v. Hertz Corp.*, 624 F.3d 537, 555 (2d Cir. 2010).  Here, Plaintiffs can do neither.  Plaintiffs point only to their own Distributor Agreements, which are entirely consistent with lawful classification as independent contractors, and Plaintiffs' own nearly identical declarations, which address only the individual experiences of Plaintiffs, each of whom worked out of the same warehouse in

Newburgh, New York. The Motion is entirely bereft of evidence pertaining to practices and experiences beyond those of the Plaintiffs themselves, offering nothing to suggest, let alone prove, a statewide common unlawful policy.

Further, Plaintiffs' own deposition testimony confirms that it would be impossible to collectively adjudicate the claims of all distributors in the State of New York. Independent contractor status under the FLSA is governed by an "economic realities" test, which considers factors such as "(1) the degree of the control exercised by the employer over the workers; (2) the workers' opportunity for profit or loss and their investment in the business; (3) the degree of skill and independent initiative required to perform the work; (4) the permanence or duration of the working relationship; and (5) the extent to which the work is an integral part of the employer's business." *Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1058-59 (2d Cir. 1988). Plaintiffs are not remotely similarly situated even as to each other with respect to application of this standard. For example, while Plaintiff Valdez made independent "business decision[s]" to purchase a second territory, hire workers to service both of his territories, and focus his own time on growing sales (Valdez Dep. 73:10-74:15)[2], Plaintiff Bower owned a single territory, never hired anyone, and alleges that he was micromanaged to the point that he was given a daily schedule to follow (Bower Dep. 211:7-213:24). Plaintiff Fryar, for his part, took yet an entirely different approach than Valdez or Bower, hiring family members to run his business while he frequently stayed at home. (Fryar Dep. 289:20-292:13, 298:4-22). In light of this widely divergent testimony, Plaintiffs cannot show they were "similarly situated with respect to their job requirements," and their Motion must be denied for that reason as well. *Myers*, 624 F.3d at 555.

---

[2] References to "___ Dep." are to excerpts from transcripts of deposition testimony and exhibits, all of which are attached to the Declaration of Matthew W. Lampe submitted herewith.

## BACKGROUND

**I.     FLOWERS FOODS, INC., LEPAGE BAKERIES PARK ST., LLC, AND C.K. SALES, CO.**

Flowers owns bakery subsidiaries throughout the United States.  (Linthicum Decl. ¶ 2). Each subsidiary produces various products, such as fresh bread, buns, rolls and snack cakes under brands such as Nature's Own, Wonder, TastyKake, Cobblestone Mill, Barowsky's, Sunbeam, and Country Kitchen.  (Linthicum Decl. ¶ 2).  Flowers acquired Lepage, which is one of these subsidiaries, in 2012.  (Linthicum Decl. ¶ 2).  Flowers products are distributed in the State of New York largely through distributors contracted by Lepage (through its subsidiary C.K. Sales) and Flowers Baking Co. of Oxford, LLC ("Oxford").   (Linthicum Decl. ¶ 3; *Carr et al. v. Flowers Foods, Inc. et al.*, 15-cv-06391, Dkt. 85-5, ¶ 9).  Lepage operates in New England and New York State north of New York City.  (Linthicum Decl. ¶ 3).  Oxford operates in the mid-Atlantic region, including parts of New York State.  (*See Carr et al. v. Flowers Foods, Inc. et al.*, 15-cv-06391, Dkt. 85-5, ¶ 9).

**II.    INDEPENDENT DISTRIBUTORS**

A subsidiary of Lepage called C.K. Sales contracts with independent distributors, who purchase the exclusive rights to sell and distribute certain products within defined geographic areas.  (Linthicum Decl. ¶ 4).[3]  The goal of Lepage and C.K. Sales is to incentivize distributors by, for example, giving them ownership of a defined territory and allowing them to increase their own equity and profits in their territories through increasing sales.  (Linthicum Decl. ¶ 5).  C.K. Sales began selling distribution rights to independent businesses in New York in early 2014. (Linthicum Decl. ¶ 4).

---

[3] Neither Flowers nor Lepage contracts with any independent distributors.  (Linthicum Decl. ¶ 4).

Each independent distributor, often through their own, independently-established corporation, enters into a Distributor Agreement with C.K. Sales, under which the distributor purchases exclusive distribution rights in a particular territory.  (Linthicum Decl. ¶ 4).  Each distributor purchases products from C.K. Sales at a specified discount percentage from the suggested wholesale price, and the distributor resells those products to customers within their territory for a higher price.  (Linthicum Decl. ¶ 6).  Distributors' profit is the difference between the purchase price and the price at which they sell product, less business expenses.  (Linthicum Decl. ¶ 6).  Distributors pick up their product from one of six Lepage warehouses in the State of New York, located in Canastota, Castleton, Newburgh, Plattsburgh, Queensbury, and Rotterdam. (Linthicum Decl. ¶ 3).

In the Distributor Agreement, each distributor acknowledges that he or she is an independent contractor, that he or she "shall not be controlled by Company as to the specific details or manner of Distributor's business," that "Distributor's business is separate and apart from that of Company and it is of the essence of this Agreement that Distributor is an independent business," and that "[n]either Distributor nor any of Distributor's employees, agents, or servants shall be considered or deemed in any way to be employees, agents or servants of Company."  (Schucker Dep. Exh. 7, § 16.1; Fryar Dep. Exh. 4, § 16.1; Bower Dep. Exh. 3, § 16.1; Heinrich Dep. Exh. 2, § 16.1; Shafer Dep. Exh. 3, § 16.1; Valdez Dep. Exh. 1, § 16.1). The Agreement also states that the "risk of loss shall pass to Distributor upon delivery" of product, that the distributor must use his "commercially reasonable best efforts to develop and maximize the sale" of products in the territory, must "actively solicit[] all [customers] not being serviced," "maintain[] an adequate and fresh supply" for customers, and "maintain[] proper service and delivery to all [customers] requesting service in accordance with the [customer's]

requirements." (*Id.* at §§ 4.1, 5.1, 2.6.)  The Distributor Agreement permits the distributor to

"carry noncompetitive products," makes the distributor responsible for obtaining his or her own

delivery vehicle and applicable insurance policies, provides that distribution rights can be sold,

in whole or in part, at any time, and permits the distributor to engage any persons the distributor

deems appropriate to carry out the contractual obligations.  (*Id.* at §§ 5.1, 9.1, 15.1, 16.2.)

## III.    THE PLAINTIFFS' DISTRIBUTORSHIP BUSINESSES

The six named Plaintiffs are current or former independent distributors who purchased

distribution rights from C.K. Sales.  (Valdez Dep. 34:15-34:22; Bower Dep. 74:16-74:25, 75:25-

76:7; Fryar Dep. 64:8-64:11, 79:21-79:25, 387:7-387:18; Heinrich Dep. 94:24-95:3; Schucker

Dep. 149:5-149:20, 389:6-389:14; Shafer Dep. 221:3-224:19, 248:21-23).  Plaintiff Valdez runs

a distributorship called G&T Corporation, through which he made the "business decision" to

purchase a second full territory in March 2015 and later a partial territory from another

distributor to "make more money."  (Valdez Dep. 73:10-74:15).  G&T hired two workers to

handle the day-to-day work of delivering bread to its customers, which enabled Valdez to focus

on growing sales.  (Valdez Dep. 87:24-89:21).  Valdez decided to treat his workers as

independent contractors, and he devised a compensation arrangement whereby he split the net

profit of each territory with the workers on a 70/30 basis.  (Valdez Dep. 172:17-22, 228:2-

230:9).  In October 2016, Valdez decided to sell one of G&T's territories to an independent

buyer.  (Valdez Dep. 93:15-95:16).

Plaintiff Schucker came to his distributorship, Starring Rolls, Inc., with years of business

experience.  He previously started his own grocery business, which he ran for nine years, and

had been a chain restaurant manager before that.  (Schucker Dep. 20:4-24, 33:8-10).  Schucker

paid for his territory in cash, and negotiated the purchase of his delivery vehicle on his own.

(Schucker Dep. 144:11-145:19, 162:5-24, 187:6-188:2) (not "financially responsible" to take the

company-offered lease).  He chose not to hire employees although he knew he was free to do so.  (Schucker Dep. 164:13-21).  Schucker did not advertise, instead implementing other strategies to maximize sales.  (Schucker Dep. 163:6-12, 228:17-229:24, 250:4-19).  Schucker operated his distributorship for nine months, and then sold his distribution rights back to C.K. Sales.  (Schucker Dep. 381:18-382:5, 389:7-20).  Shortly after ending his relationship with C.K. Sales, Schucker, through Starring Rolls, Inc., entered into an independent contractor relationship with a different manufacturer, Mission Foods, to sell and distribute that company's Mexican food products.  (Schucker Dep. 175:10-15, 336:5-15).

Plaintiff Heinrich came to C.K. Sales with more than 15 years experience as a Wonder Bread salesman.  (Heinrich Dep. 35:17-20).  He purchased one territory through his business SAGN Corp. in March 2014 that he owns today and primarily operates himself.  (Heinrich Dep. 30:16-18, 71:19-23, 84:18-21, 94:19-95:3, 110:9-13).  Heinrich increased sales in his territory, including by adding four new customers through his own efforts.  (Heinrich Dep. 100:10-101:20).  He has not hired anyone to service to his territory, but sets his own schedule so that he is home 30-60 minutes before his children get home from school.  (Heinrich Dep. 84:18-21, 85:9-86:17, 283-84, 301:3-302:19).  In about October 2014, Heinrich purchased a partial territory, but sold it because, in his view, the operating costs were too high.  (Heinrich Dep. 69:9-70:4, 132:5-21).

Plaintiff Bower operated his distributorship, Bowers Bread and Cakes, Inc., from March 2014 to October 2016, and owned a single territory which he primarily serviced himself.  (Bower Dep. 151:3-153:24).  Bowers Bread and Cakes grew sales by building a rapport with existing customers and by persuading two stores to buy additional product from him, which Bower acknowledged "benefit[ted] [him] financially."  (Bower Dep. 108:21-113:6, 122:3-9).  He

alleges that a C.K. Sales warehouse manager instructed him to service his accounts on a specific schedule.  (Bower Dep. 211:7-213:24).  After his relationship with C.K. Sales ended, Bower temporarily worked for Plaintiffs Valdez and Fryar.  (Bower Dep. 315:4-317:24).

Plaintiff Shafer purchased his territory in March 2014, and purchased rights to expand his territory in October 2014.  (Shafer Dep. 77:8-19).  He hired his son and another student part-time to service customers, but otherwise serviced his customers himself.  (Shafer Dep. 151:23-152:13).  He never made any real attempts to grow his business, and admits that no company manager told him how to run his business.  (Shafer Dep. 52:7-19, 65:3-13, 141:2-45:23 ("I had three times the amount of experience these guys had.  There was nothing they could tell me as far as service patterns, customer treatment")).  He later sold a portion of his territory to Plaintiff Valdez, and sold the remainder of his territory to C.K. Sales in early 2016.  (Shafer Dep. 236:15-237:3, 238:7-25, 248:21-23).

Plaintiff Fryar purchased his territory in March 2014 through his business, Ryan F. Baby, Inc.  (Fryar Dep. 80:18-25).  Ryan F. Baby used Fryar's nephew and son to service customers while Fryar was "home."  (Fryar Dep. 289:20-292:13, 298:4-22).  During the time Fryar was not at home, he focused on growing sales at his biggest customer accounts and developed unique strategies for each account, such as "reconstructing my route in order to take care" of customers, persuading store managers to give him "massive displays" by showing them he was intent on "making money" for the stores, and getting special signage made.  (Fryar Dep. 179:3-186:21).

## IV.     PROCEDURAL HISTORY

### A.     *Schucker* Litigation

In May 2016, Plaintiffs brought the instant action, alleging that they were misclassified as independent contractors and, as a result, are owed unpaid overtime under the FLSA.  (Dkt. 1).  Plaintiffs also assert individual claims under the New York Labor Law.  (*Id.*)  In November

2016, Plaintiffs moved for conditional certification of an FLSA collective of "[a]ll individuals who through a contract, or otherwise, perform or performed as Distributors for Defendants under an agreement with Defendant and who were classified by Defendants as 'independent contractors' anywhere in the State of New York at any time from the date three years preceding the commencement of this action through the close of the Court-determined opt-in period and who file a Consent to Join this action."  (Dkt. 44).

>    **B.**    *Neff* **and** *Carr* **Litigation**

About six months before *Schucker* was filed, two Lepage distributors brought the action *Neff et al. v. Flowers Foods, Inc.*, No. 15-cv-254 (D. Vt.), against Flowers and Lepage, alleging that they were misclassified as independent contractors and seeking unpaid overtime under the FLSA.  In November 2016, the *Neff* court conditionally certified a collective of "all Distributors who have contracted with CK Sales" in the three years prior to the filing of the complaint, except for distributors based in Maine, who were already the subject of a separate pending FLSA misclassification lawsuit.  (*Neff* Dkt. 56, Order at 7).  The *Neff* notice group included all Lepage distributors in the State of New York.  (*Id.* at 2).  Notice issued in early December 2016, and, to date, 19 New York distributors have opted into the case.  (*Neff* Dkts. 57, 58, 64, 68, 70, 72, 74, 80, 81, 87, 88, 101, 106, 108, 111, 121, 128, 130, 160).

Around the same time *Neff* was filed, independent distributors who contracted with Oxford brought a separate suit against Oxford and Flowers under the FLSA alleging that they were misclassified as independent contractors.  *See Carr et al. v. Flowers Foods, Inc.*, 2:15-cv-06391 (E.D. Pa.).  On January 26, 2017, the *Carr* court granted plaintiffs' motion for conditional certification and notice to all independent distributors that had contracted with Oxford in the last three years.  (*Carr* Dkt. 113).  This group included all Oxford distributors in the State of New York.  (*Carr* Dkt. 114, Order at 2).  Notice issued on March 31, 2017, and so far, 13 New York

distributors have opted in.  (*Carr* Dkts. 39-1, 39-2, 39-3, 39-5, 39-6, 46-1, 104, 106, 107, 110, 119, 122, 126).  The *Carr* opt-in period closes on June 29, 2016.  (*Carr* Dkt. 131).

## ARGUMENT

### I.   THE COURT SHOULD DENY PLAINTIFFS' MOTION FOR CONDITIONAL CERTIFICATION AND NOTICE

To obtain conditional certification, a plaintiff must make a threshold showing that she is "similarly situated" to proposed collective members.  29 U.S.C. § 216(b).  Plaintiffs bear the burden of proof on this issue, *see Guillen v. Marshalls of MA, Inc.*, 750 F. Supp. 2d 469, 475 (S.D.N.Y. 2010), and courts have discretion in deciding whether to grant conditional certification, s*ee Hoffman-LaRoche Inc.,* 493 U.S. at 171-72.  Although a plaintiff may meet the burden at the conditional certification stage by making a "modest" factual showing, certification at this stage "is not automatic." *Jenkins v. TJX Cos. Inc.*, 853 F. Supp. 2d 317, 322 (E.D.N.Y. 2012).  Rather, plaintiff's showing "must be [ ] based on some substance," *Guillen,* 750 F. Supp. 2d at 480, and "cannot be satisfied [ ] by unsupported assertions."  *Myers*, 624 F. 3d at 554 (citation omitted).  Courts "must . . . take a measured approach when addressing a request for collective action certification, mindful of the potential burdens associated with defending against an FLSA claim involving a large and broadly defined collective group of plaintiffs."  *Rudd v. T.L. Cannon Corp.*, 2011 WL 831446, at *6 (N.D.N.Y. Jan. 4, 2011), *adopted by*, 2011 WL 830636 (N.D.N.Y. Mar. 3, 2011).

### II.   PLAINTIFFS' MOTION SHOULD BE DENIED AS DUPLICATIVE AND UNNECESSARY

The "similarly situated" test is rooted in the U.S. Supreme Court's admonition that notice is warranted only "in appropriate cases" where the "judicial system [would] benefit[] by *efficient resolution* in *one proceeding* of common issues of law and fact arising from the same alleged . . . activity." *Hoffmann-LaRoche*, 493 U.S. at 169-70 (emphasis added).  As Plaintiffs

concede (Motion at 8), the FLSA notice mechanism is intended to lead to "efficient resolution" of FLSA claims by "avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." *Hoffmann-LaRoche*, 493 U.S. at 170, 172.

In light of this rationale, courts refuse to allow repeat notice to the same group of individuals in a second, overlapping FLSA lawsuits because doing so would "frustrate the underlying rationale for using the [collective] action mechanism," and would "lead to likely confusion and judicial waste." *Medina v. Bros. Behrman Hwy., Inc.*, 2015 WL 3679534, at *3 (E.D. La. June 12, 2015) (refusing to conditionally certify second collective action that encompassed group certified in previous lawsuit) (internal quotation marks and citation omitted); *Alvarez v. Gold Belt, LLC*, 2011 WL 1337457, at *2 (D.N.J. Apr. 7, 2011) (refusing to grant conditional collective action certification where another collective action covering the same group had been certified; "[a]ny ruling in this action on any issue...could conflict with [the judge's] findings on the same issues in the case before him . . . [and] would cause havoc for the parties and for the state of the law"); *Alvarez v. Gold Belt, LLC*, 2009 WL 1473933, at *4 (D.N.J. May 26, 2009) (denying conditional certification, where overlapping certification motion was pending in separate action).

In *Neff v. Flowers Foods, Inc. et al.*, 15-cv-254 (D. Vt. Nov. 7, 2016) (Dkt. 56), plaintiffs moved for conditional certification of a collective of independent distributors who contracted with C.K. Sales in all of the states where Lepage operated. *Id.* at 2. The court granted conditional certification, but excluded Maine distributors from the conditionally-certified collective because these distributors were the subject of an FLSA conditional certification motion in a separate case. *Id.* at 7-8 ("[t]here is no good reason for sending overlapping notices inviting the same people to join two lawsuits").

-11-

Here, too, there is "no good reason" to send notice to distributors who have already received notice once, if not twice. *Neff*, Order at 7-8. All distributors in the State of New York (save for one) have already received notice and opportunity to join either the *Neff* litigation, the *Carr* litigation, or both. In particular, 94 of the 95 distributors in Plaintiffs' proposed FLSA collective received notice in one of the two cases, and 19 received notice in *both* cases. (Lampe Decl. ¶ 3). Of the 94 who received notice in *Neff* and/or *Carr*, 21 have already opted in to at least one of the cases, and 11 have opted into both cases.[4] (Lampe Decl. ¶ 4). Moreover, notice issued in *Carr* on March 31, 2017, and the opt-in period does not close until June 29, 2017, meaning that additional New York distributors may opt in. (*Carr* Dkt. No. 131). Where the same group of individuals received at least one, if not two, separate chances to join litigation that covers these very claims, issuing notice yet again would serve no purpose but rather would cause confusion and duplicative proceedings, and waste the resources of the Court and the parties. *Castillo v. Taco Bell of Am.*, 960 F. Supp. 2d 401, 405 (E.D.N.Y. 2013) (holding there was no need "to send a second class notice to individuals who have already received such notice but have elected not to participate"). Thus, Plaintiffs' request to issue notice a second or even third time to New York distributors should be denied.

### III. CONDITIONAL CERTIFICATION SHOULD BE DENIED BECAUSE PLAINTIFFS HAVE NOT DEMONSTRATED THEY ARE SUBJECT TO A COMMON UNLAWFUL POLICY OR THAT THEY ARE SIMILARLY SITUATED WITH RESPECT TO THEIR JOB REQUIREMENTS

#### A. Plaintiffs Have Failed To Demonstrate a Common Unlawful Policy

As Plaintiffs acknowledge (Motion at 8), to show they are "similarly situated" to potential opt-in plaintiffs, Plaintiffs must be "victims of a *common policy or plan that violated*

---

[4] *See Neff* Dkts. 57, 58, 64, 68, 70, 72, 74, 80, 81, 87, 88, 101, 106, 108, 111, 121, 128, 130, 160; *Carr* Dkts. 39-1, 39-2, 39-3, 39-5, 39-6, 46-1, 104, 106, 107, 110, 119, 122, 126.

the law." *Myers*, 624 F.3d at 555 (emphasis added).  In a misclassification case, in order for a

policy to "violate[] the law," plaintiffs must show that potential opt-ins similarly performed work

that entitled them to FLSA protection.  *See Guillen*, 750 F. Supp. 2d at 478 (denying notice;

plaintiff failed to show that he and potential opts-in were similarly situated with respect to the

allegation that they spent the majority of their time performing non-exempt tasks); *Jenkins*, 853

F. Supp. 2d at 324-25 (denying notice; plaintiff failed to show that proposed nationwide group of

collective members performed non-exempt tasks); *Kahn v. Airport Mgmt. Servs., LLC*, 2011 WL

5597371, at *4-5 (S.D.N.Y. Nov. 16, 2011) (same).

     Contrary to Plaintiffs' contention (Motion at 1), the Distributor Agreements between

Plaintiffs and C.K. Sales do not satisfy their burden.  On their face, the Distributor Agreements

establish only that Plaintiffs were *lawfully* treated as independent contractors.  Whether

individuals are lawfully classified as independent contractors under the FLSA turns on an

economic realities test, which includes consideration of fact-intensive factors such as "(1) the

degree of the control exercised by the employer over the workers; (2) the workers' opportunity

for profit or loss and their investment in the business; (3) the degree of skill and independent

initiative required to perform the work; (4) the permanence or duration of the working

relationship; and (5) the extent to which the work is an integral part of the employer's business."

*Brock*, 840 F.2d at 1058-59; *see, e.g., Schwind v. EW & Assocs., Inc.*, 357 F. Supp. 2d 691, 700

(S.D.N.Y. 2005).

     Applied to the Distributor Agreements, these factors confirm Plaintiffs' lawful

classification as independent contractors, and therefore do not support conditional certification.

For example, the agreements provide that Plaintiffs "shall not be controlled by Company as to

the specific details or manner of Distributor's business" (§ 16.1), that the distributor may "carry

noncompetitive products" (§ 5.1), and that the distributor is "free to engage any persons the distributor deems appropriate to carry out the obligations contained in the Agreement" (§ 16.2). *See, e.g., Velu v. Velocity Exp., Inc.*, 666 F. Supp. 2d 300, 307 (E.D.N.Y. 2009) (plaintiff who "may work for other companies" and "has a great deal of control over his own work and work schedule, subject to the demands of clients" was properly classified as an independent contractor).  Similarly, the agreements provide that the "risk of loss shall pass to Distributor upon delivery" of product (§ 4.1) and that the distributor is responsible for obtaining his or her own delivery vehicle and applicable insurance policies (§ 9), demonstrating that the worker had "opportunity for profit and loss" and "investment in the business." *Browning v. Ceva Freight, LLC*, 885 F. Supp. 2d 590, 596, 609 (E.D.N.Y. 2012) (when workers utilize their own vehicles and are responsible for the costs and expenses associated with those vehicles, including maintenance and repair, this factor weighs in favor of independent contractor status).

Nor do Plaintiffs' own five boilerplate declarations (Motion at 5-7) support their conditional certification bid.  The declarations, at most, describe Plaintiffs' own individual experiences and say nothing about the putative collective.  Although Plaintiffs claimed in their declarations that they were "held to the same performance standards as other Distributors" and were "required to follow the same protocol when delivering to Flowers' customers" (Schucker Decl. ¶ 8, Valdez Decl. ¶ 8; Heinrich ¶ 8, Bower Decl. ¶ 8, Fryar Decl. ¶ 8), at deposition they disavowed these statements, admitting that they have *no* knowledge as to whether any other distributor had similar experiences.  (*See* Bower Dep. 326:9-328:6 (does not know "the efforts other [distributors] use[d] to grow their accounts," "if [other distributors] advertised," other distributors' orders, expenses, and schedules, or "how many employees each independent distributor had"); Fryar Dep. 334:9-336:4 (does not know "the efforts of other distributors,"

"whether other distributors advertised," "sales [of] other distributors," "profits . . . [of] other distributors," "details of other distributor's expenses," or "whether other distributors engaged employees"); Heinrich Dep. 269:6-270:25 ("I don't know what they [other distributors] do. They could take a truck home.  I don't know where they go or what they do in the morning.  I go out and do my job."; "I don't talk to no one else about their routes"); Schucker Dep. 332:12-16 (did not know what other distributors "were all doing with their time on a day-to-day basis when they were out on their route"); Shafer Dep. 253:15-255:4 (did not know "the hours worked by other distributors," "the schedules of other distributors," "the efforts other distributors use to grow their accounts," "whether other distributors advertised," or "whether other distributors recommend products").)

Furthermore, as courts have held time and again, the types of vague and conclusory references to unspecified "other distributors" that Plaintiffs include in their declarations are woefully insufficient to meet their burden of showing a common unlawful policy.  *Fernandez v. On Time Ready Mix, Inc.*, 2014 WL 5252170, at *2 (E.D.N.Y. Oct. 4, 2014) (denying conditional certification; plaintiff's declaration stated only that "all of the drivers employed by the Defendant" were subject to the same policies); *Morales v. Plantworks, Inc.*, 2006 WL 278154, at *2 (S.D.N.Y. Feb. 2, 2006) (denying conditional certification; only "support for plaintiffs' claim that they are similarly situated to other . . . employees comes from their conclusory allegation . . .  that '[t]here are over 20 current and former employees that are similarly situated to [p]laintiffs'"); *Kahn*, 2011 WL 5597371, at *4 (denying conditional certification; "vague and conclusory statements that fail to specifically identify the other managers who are allegedly similarly situated to plaintiff" insufficient).  As such, because Plaintiffs' sole evidence in support of their Motion is insufficient to establish a common,

unlawful policy applicable to the proposed collective as a whole, the Court should deny their

Motion.  *See Guillen*, 750 F. Supp. 2d at 476, 480.

> **B.      Plaintiffs Cannot Meet Their Burden To Demonstrate They Are Similarly Situated With Respect to Their Job Requirements**

As Plaintiffs similarly acknowledge (Motion at 9), to satisfy their conditional certification

burden, Plaintiffs must also proffer evidence that "there are other employees . . . who are

similarly situated with respect to their job requirements . . . on which the criteria for many FLSA

exemptions are based."  *Myers*, 624 F.3d at 555.  In this case, Plaintiffs allege they were

misclassified as independent contractors, and thus must make some showing that they are

similarly situated with respect to the criteria upon which courts evaluate independent contractor

classification.  *See supra* p. 13.  Where plaintiffs fail to make a minimal showing of similarity as

to these criteria, courts routinely deny conditional certification.  *Scott v. NOW Courier, Inc.*,

2012 WL 1072751, at *10 (S.D. Ind. Mar. 29, 2012) (denying conditional certification; "[i]t is

not clear, assuming some drivers should be considered and treated as employees rather than as

independent contractors, whether that would be true of all of them"); *Demauro v. Limo, Inc.*,

2011 WL 9191, at *3 (M.D. Fla. Jan. 3, 2011) (denying conditional certification; "the

individualized analysis needed to determine whether each driver is an independent contractor or

employee for FLSA purposes precludes class certification"); *see also Swinney v. Amcomm

Telecoms., Inc.*, 2013 WL 28063, at *9 (E.D. Mich. Jan. 2, 2013) (denying conditional

certification of independent contractors who installed and repaired cable, internet and telephone

services).

Here, Plaintiffs fail to demonstrate that they are similarly situated to *each other*, let alone

to a putative class of distributors throughout the State of New York.  Indeed, Plaintiffs' own

deposition testimony shows that their relationships with Defendants differed significantly in ways material to their classification as independent contractors.

Plaintiffs testified to varying degrees of control, a significant factor in the independent contractor analysis. *See Velu*, 666 F. Supp. 2d at 307 (fact that neither "Defendant nor its agents supervise Plaintiff's work" and "Plaintiff has a great deal of control over his own work and work schedule, subject to the demands of clients" significant to independent contractor finding). While Plaintiff Valdez made numerous business decisions without any input from Defendants, including purchasing a second full territory and partial territory, deciding to hire two workers, treat them as independent contractors and set their compensation, using his judgment to order based on the "needs of the business" because "there's no mathematical tool to do it," and setting his own schedule so that he could pick up his daughters from school every day (Valdez Dep. 78:17-79:17, 87:24-89:21, 110:2-15, 128:15-129:22, 208:16-209:15, 214:15-216:14), Plaintiff Bower owned a single territory, never hired anyone to help him, alleges that defendant managers gave him a schedule to follow to avoid "discipline," and claims these managers changed his orders "a lot" (Bower Dep. 68:9-11, 94:24-95:3, 212:11-25, 274:14-275:14). Unlike Bower, Plaintiff Heinrich independently devised his own schedule for servicing customers and decided how many times a week to service each customer based on his assessment of sales and customer needs. (Heinrich Dep. 207:8-10 ("I go by what sells. You need me four days a week I'll be here four days.").) For his part, Plaintiff Schucker claimed that Lepage managers gave him recommendations on how to operate his business, but Schucker testified that he ignored the recommendations. (Schucker Dep. 226:15-227:15 (ignored suggestion to rotate all products on Saturday; "I decided" that rotating on Friday "was better . . . I'm not gonna lose one of my better days when half the bread isn't on the shelf. It didn't make sense.")). Unlike Valdez, Bower,

Heinrich or Schucker, Plaintiff Fryar stepped away from his business and let his workers run it while he was at "home" without any complaint from Defendants (Fryar Dep. 289:20-291:13).

Similarly, Plaintiffs testified to varying opportunities for profit, loss, and varying business investments. *See 7-Eleven, Inc. v. Sodhi*, 2016 WL 3085897, at \*6 (D.N.J. May 31, 2016) (that employee had invested in business weighed in favor of independent contractor finding). For example, while Plaintiff Valdez ordered business cards, came up with a marketing slogan, minimized business expenses, and deducted business expenses from his taxes (Valdez Dep. 162:23-163:4, 249:22-250:10, 262:24-263:25, 265:18-23, 271:18-272:8, 278:3-24), Plaintiff Shafer alleged that he made no real attempt to grow his business or leverage any business knowledge, even testifying that he is "not sure" whether he deducted business expenses on his tax returns and doesn't "really have a system" for tracking business expenses (Shafer Dep. 52:7-19, 65:3-13, 196:5-8, 197:12-19). Plaintiff Bower, for his part, attempted to grow his business by building "rapport" with existing customers to increase sales and used a business bank account to pay himself a salary, but did not advertise or solicit new accounts because he believed that it was "financially not feasible" (Bower Dep. 109:5-25, 155:6-17, 196:2-197:10, 262:23-25, 272:6-20). And while some plaintiffs took a loan to cover the purchase price of their distribution rights and leased a vehicle through C.K. Sales (Heinrich Dep. 77:5-79:22), Plaintiff Schucker financed these purchases on his own and, as a result, had different expenses than others (Schucker Dep. 298:12-22 ("I also had a car payment, I also had gas, I also had a bill for buying the route" and therefore "everybody else's was not like mine")).

Likewise, as to profit and loss, while Plaintiff Heinrich sold his territory for a profit (Heinrich Dep. 145:8-16 ("built equity" and sold partial territory for a $2,000 profit)), Plaintiff Valdez sold one of his territories because he was "losing a lot of money" on it (Valdez Dep.

77:22-78:4), and Plaintiff Schucker sold his for the same price he paid for it.  (Schucker Dep. 381:18-382:5, 389:10-21).  (*See also* Valdez Dep. 262:19-23 ("profitability of different territories is . . . going to differ by territory and by distributor").)  Plaintiffs also had varying opportunities for profit and loss depending on their ability to negotiate additional discounts off of their purchase price from C.K. Sales.  (*Compare* Schucker Dep. 143:3-144:3 (persuaded C.K. Sales to increase his additional discount because it was only 2-3% while others were getting 20-25%) *with* Heinrich Dep. 114:15-20 (never sought an increase), and Fryar Dep. 125:14-23 (company was "giving people more and giving people less" additional discount)).  Profit also depends upon customer-specific variables, such as where a customer is located and how much product a customer purchases.  (Valdez Dep. 221:14-22 (profit "depends on the particulars of a particular account"; "cost of servicing [an] account may not make business sense").)

Plaintiffs also lack the requisite similarity as to other factors in the independent contractor analysis, including the skill and independent initiative required to do the job and the degree of permanence or temporariness of the relationship.  *See 7-Eleven, Inc.*, 2016 WL 3085897, at *6 (fact that plaintiff used "business-like initiative . . . to invest" and "entrepreneurial skills" weighed in favor of finding that he was independent contractor). Plaintiff Shafer testified that in his view, purchasing a territory was not "really that big of a deal" because he had "six months to figure out whether or not [he] liked [the agreement]" and during that time, did not believe he was actually capable of growing his business.  (Shafer Dep. 72:19-73:5).  In contrast, Plaintiff Schucker, who had owned businesses in the past, used his business acumen and industry knowledge to increase sales.  (Schucker Dep. 253:7-254:17).

-19-

Based on these differences, Plaintiffs cannot show – even as to each other – that they are "similarly situated with respect to their job requirements."[5]  *Myers*, 624 F.3d at 555.  Thus, the Motion must be denied on this basis as well.[6]

## C.    Plaintiffs' Reliance on Other Certification Decisions Is Unavailing

Plaintiffs argue (Motion at 12-13) that this Court should grant their Motion because other courts have conditionally certified collective actions in cases against Flowers.  But in *none* of the cases cited was the court confronted with a request to issue notice to a group of distributors that had very recently received notice in a separate case.  In fact, in *Neff*, the court considered this very issue and *declined* to issue a notice to a group that was already the subject of a motion for conditional certification in another case.  Here, the rationale is even stronger since notice has already been *granted* in both of the cases that overlap with the instant suit.

_____

[5] Moreover, certification is not appropriate because Defendants' FLSA exemption defenses likewise cannot be adjudicated collectively.  For example, Plaintiffs' testimony showed variance as to whether "making sales" was the primary duty (29 C.F.R. § 541.500), such that the FLSA's outside sales exemption would bar their claims.  (*See* Valdez Dep. 87:24-89:21 (Valdez focused on sales while his workers delivered product).)

[6] Even if the Court were to find that Plaintiffs have made some showing that they are similarly situated to other distributors at the Newburgh warehouse, they have made no showing whatsoever that they are similarly situated to any individuals outside of the Newburgh warehouse, or any distributors who had contracts with Oxford.  All six Plaintiffs picked up product from the Newburgh warehouse (Fryar Dep. 24:19-24; Valdez Dep. 190:4-9; Heinrich Dep. 265:4-9; Shafer Dep. 80:3-20; Schucker Dep. 138:7-9; Bower Dep. 321:11-16), and they readily admitted in deposition either that they have no knowledge of other distributors outside of that facility (Bower Dep. 328:7-10 10 (does not know practices of other New York distributors); Fryar Dep. 336:9-13 (does not know how other New York distributors ran their businesses); Valdez Dep. 259:5-12 (to "figure out what any distributor is doing on a day-to-day basis the only way to find out is to ask them person by person")), or that other distributors are *not* similarly situated to Plaintiffs.  (*See* Heinrich Dep. 264:14-16 ("I know guys that work in other depots and they don't get treated like the way we get treated.").  In view of these facts, Plaintiffs' request for notice beyond the Newburgh warehouse must be denied.  *See Hodzic v. Fedex Package Sys., Inc.*, 2016 WL 6248078, at *9 (W.D. Pa. Oct. 26, 2016) (denying request for nationwide notice where Plaintiffs presented evidence concerning just one facility); *Guillen*, 750 F. Supp. 2d at 477 (allegations that plaintiffs performed non-exempt tasks in nine stores in a particular metro area provided little basis to show he was similarly situated to employees in his position nationwide); *Laroque v. Domino's Pizza, LLC*, 557 F. Supp. 2d 346, 355-56 (S.D.N.Y. 2008) (conditionally certifying employees at the store where plaintiffs worked, but declining to certify employees at five other stores where the evidence relating to those five stores amounted to hearsay and "generalized allegations of wrongdoing"); *Anglada v. Linens 'N Things, Inc.*, 2007 WL 1552511, at *5 (S.D.N.Y. Apr. 26, 2007), *report and recommendation adopted* (May 22, 2007) (limiting conditional certification; plaintiff offered no affidavits and averred no personal knowledge of the practices and policies in other stores).

Furthermore, courts have also held that prior judicial rulings in similar cases are insufficient on their own to justify conditional certification. *See, e.g., Hodzic*, 2016 WL 6248078, at *8 ("[T]he Court cannot rely on judicial rulings in prior cases involving [defendant] to justify conditional certification" of a statewide collective action, "but must evaluate the evidence that Plaintiffs have introduced in these proceedings"). Plaintiffs' evidence here is insufficient to justify any kind of statewide notice and therefore their request must be denied.

## IV.   PLAINTIFFS' PROPOSED NOTICE AND CONSENT FORM ARE DEFECTIVE

The Court should deny the Motion outright, in which case it would not need to reach the issue of Plaintiffs' proposed form of notice. However, if the Court does not, Defendants object to Plaintiffs' proposed notice. Notice must be "accurate" and must provide sufficient information to allow "informed decisions about whether to participate." *Hoffman-LaRoche*, 493 U.S. at 170. Plaintiffs' proposed notice (Dkt. 45-1) fails this standard for numerous reasons, including:

First, Plaintiffs' proposed time period is improper. Plaintiffs have requested that notice issue to persons who worked as distributors at any time from May 10, 2010 (six years before the Complaint was filed) to the present. (Motion Exh. 1.) But Plaintiffs concede that the statute of limitations on FLSA claims is, at most, three years. (Motion at 15). *See also* 29 U.S.C. § 255. Permitting notice to individuals who cannot timely opt-in would only cause confusion. *See Sanchez v. El Rancho Sports Bar Corp.,* 2014 WL 1998236, at *4 (S.D.N.Y. May 13, 2014) (recent trend is to deny requests for a six-year notice period to avoid "confusion" and "inefficiency of providing notice to plaintiffs whose claims may well be time-barred"); *Hamadou v. Hess Corp.*, 915 F. Supp. 2d 651, 668 (S.D.N.Y. 2013) ("It would be confusing to employees who are ineligible for the FLSA opt-in class to receive the opt-in notice, which does not relate to any state law claims."); *Lujan v. Cabana Mgmt. Inc.*, 2011 WL 317984, at *9 (E.D.N.Y. Feb. 1,

-21-

2011) ("The purpose of the instant motion is to notify and inform those eligible to opt in to the collective action, and time-barred former employees may not do so.").  Moreover, Plaintiffs' proposed reason for doing so here, to purportedly "promote[] the interest of judicial economy by requiring defendants to submit lists just once when conducting discovery" (Motion at 16), serves no purpose in this case.  Here, unlike in the minority of cases that have allowed notice to reach back six years (Motion at 15-16), Plaintiffs have not pled a Rule 23 class.  Thus, should notice issue in this case (which it should not), only individuals who worked as distributors in the three years prior to the issuance of notice should be part of the notice group.

Second, Plaintiffs' proposed notice improperly refers to New York Labor Law claims. The notice mechanism serves to notify potential plaintiffs only of their right to join an FLSA action, pursuant to the FLSA's opt-in procedure, 29 U.S.C. § 216(b).[7]  The presence of state law claims is irrelevant to FLSA conditional certification and notice.  *See, e.g.*, *Foster v. Food Emporium*, 2000 WL 1737858, at *3 (S.D.N.Y. Apr. 26, 2000) (authorizing notice but not allowing the notice to include reference to state law claims).

Third, Plaintiffs' proposed notice inadequately and inaccurately describes Defendants' defenses in the case, failing even to state that Defendants deny Plaintiffs' allegations in the case, and contains a series of other confusing, misleading, and or inaccurate statements that would need to be corrected (e.g., p. 2, attempting to describe notice period and stating "a date 90 days from notice, the notice period is returned undeliverable and a new address is located").  *See Ritz*

---

[7] In any event, including references to New York Labor Law claims would be improper because the operative complaint asserts New York claims only on an individual basis for the named Plaintiffs.  The complaint does not allege that Plaintiffs seek to assert New York claims on behalf of anyone but themselves.  To assert their state law claims on behalf of any other distributors, Plaintiffs would need leave from this Court to amend the operative complaint to add claims under Fed. R. Civ. P. 23 and, after a period of class certification discovery, Plaintiffs would need to successfully move for certification under Fed. R. Civ. P. 23.  *Feng v. Soy Sauce LLC*, 2016 WL 1070813, at *4 (E.D.N.Y. Mar. 14, 2016) ("To bring state-law claims on behalf of others against Defendants, Plaintiff[s] must seek class certification pursuant to Rule 23.")

*v. Mike Rory Corp.*, 2013 WL 1799974, at *2 n.2 (E.D.N.Y. Apr. 30, 2013) (where the term

"Collective" appeared twice in the proposed notice "without explanation, apparently in reference

to potential opt-in plaintiffs," the Court found that "[t]his language may confuse potential class

members, and should be clarified or modified accordingly").

<u>Fourth</u>, the proposed notice does not inform potential opt-in plaintiffs of their right to

obtain their own representation if they choose to join the lawsuit.  *See Garcia v. Pancho Villa's

of Huntington Vill., Inc.*, 678 F. Supp. 2d 89, 95 (E.D.N.Y. 2010) (directing plaintiffs to "modify

the proposed Notice so that potential plaintiffs are informed that they may retain their own

counsel, should they choose to join the within litigation").

<u>Fifth</u>, Plaintiffs' request to send a reminder notice is redundant, and may create the false

impression that the Court is encouraging individuals to join.  *See Witteman v. Wis. Bell, Inc.*,

2010 WL 446033, at *3 (W.D. Wis. Feb. 2, 2010) (rejecting request for reminder FLSA notice;

"the reminder is unnecessary and potentially could be interpreted as encouragement by the court

to join the lawsuit").  "The purpose of notice is simply to inform potential class members of their

rights.  Once they receive that information, it is their responsibility to act as they see fit."  *Id.*

<u>Finally</u>, Plaintiffs' request for a 90-day opt in period would frustrate the purpose of notice

of "setting cutoff dates to expedite disposition of the action," *Hoffman-La Roche*, 493 U.S. at

172.  A 60-day opt-in period would be more appropriate.  *See, e.g., Diaz v. S & H Bondi's Dep't

Store*, 2012 WL 137460, at *8 (S.D.N.Y. Jan. 18, 2012) (rejecting Plaintiffs' request for a 90 day

notice period; "the Court is aware of no reason why 60 days would be insufficient" and "[m]any

courts in this district have set a 60-day period").

The proposed opt-in consent form contains similar defects.  For example, it requires opt-

in plaintiffs to consent to join "any separate or subsequent action to assert my claim against

-23-

[Defendants] and/or related entities and individuals potentially liable."  (Dkt. 45-1, at 7).  A consent form cannot require opt-in plaintiffs to join unspecified and broadly defined separate actions.  *Strauch v. Computer Scis. Corp.*, 2015 WL 4877173, at *2 (D. Conn. Aug. 14, 2015) (striking similar provision from opt-in form as "overbroad and thus inappropriate").[8]

## V.  THE COURT SHOULD DENY PLAINTIFFS' REQUEST TO TOLL THE STATUTE OF LIMITATIONS

Plaintiffs also request (Motion at 19) that the Court toll the statute of limitations for all potential opt-ins as of May 10, 2016.  However, Plaintiffs provide no justification for this request.  Equitable tolling is an exceptional remedy and should only be applied "in *rare and exceptional* circumstances, in which a party is prevented in some extraordinary way from exercising his rights."  *Zerilli-Edelglass v. N.Y.C. Transit Auth*., 333 F.3d 74, 80 (2d Cir. 2003) (internal citations omitted and emphasis added).  Courts have found extraordinary circumstances where it would have been impossible for a reasonably prudent person to learn of the cause of action, *see Miller v. Int'l Tel. and Tel. Corp*., 755 F.2d 20, 24 (2d Cir. 1985), or if the defendant concealed from the plaintiff the existence of the cause of action, *Gustafson v. Bell Atlantic Corp*., 171 F. Supp. 2d 311, 323 (S.D.N.Y. 2001) (rejecting request for equitable tolling because plaintiff was aware of his classification as an independent contractor).

Here, Plaintiffs point to no "exceptional circumstances" to justify the extraordinary remedy of equitable tolling.  *Hintergerger v. Catholic Health Sys*., 2009 WL 3464134, at *14-*15 (W.D.N.Y. Oct. 21, 2009) (denying tolling for the time period while certification motion was pending).  As a result, Plaintiffs' request should be denied.  *See Cao v. Wu Liang Ye*

---

[8] In light of these defects, and others, the appropriate course if this Court were to grant some form of conditional certification is to order the parties to confer regarding the notice and consent form, and submit any disputes to the Court.  *See, e.g. Iglesias-Mendoza v. La Belle Farm, Inc*., 239 F.R.D. 363, 369-70 (S.D.N.Y. 2007) (granting "thirty days . . . to negotiate and present to the court a mutually agreeable class notice").

*Lexington Rest., Inc.*, 2010 WL 4159391, at *1 (S.D.N.Y. Sept. 30, 2010) (tolling is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs") (internal citation omitted).

## VI.   PLAINTIFFS SHOULD NOT BE PERMITTED TO SEND NOTICE USING EMAIL OR TEXT MESSAGE OR TO POST NOTICE

Although the Court should not grant the Motion, if it does, the Court should reject Plaintiffs' request (Motion at 16-18) to disseminate notice by email, text message and posting, and for cell phone numbers and e-mail addresses to the extent they are requested.  First-class mail is far and away the preferred notice method.  *Gonzalez v. Scalinatella, Inc.*, 2013 WL 6171311, at *5 (S.D.N.Y. Nov. 25, 2013) (first-class mail sufficient and requiring no production of telephone numbers or e-mail addresses); *Han v. Sterling Nat'l Mort. Co., Inc.*, 2011 WL 4344235, at *12 (E.D.N.Y. Sept. 14, 2011) ("[P]laintiff's request for…phone numbers is premature"; "no evidence at this time that plaintiff will have trouble reaching the Proposed Class by sending the class notice to their address via first class mail"); *see also Parks v. Eastwood Ins. Servs., Inc.*, 2002 WL 34370244, at *5 (C.D. Cal. July 29, 2002) ("[P]roduction of telephone numbers . . . is unwarranted and presents a greater risk of improper solicitation").

Plaintiffs' request that the notice be posted at Defendants' warehouses (Motion at 17) should also be denied.  Such notice would be redundant because "the only [distributors] who will be reached by such notice will be current [distributors], who will receive the same notice by mail" given that Defendants likely have current contact information for them.  *Garcia v. Spectrum of Creations, Inc.*, 102 F. Supp. 3d 541, 551 (S.D.N.Y. 2015); *see also Michael v. Bloomberg L.P.*, 2015 WL 1810157, at *4 (S.D.N.Y. Apr. 17, 2015) (collecting cases).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court should deny Plaintiffs' Motion in its entirety.

Dated: April 7, 2017
New York, New York

Respectfully submitted,


*/s Matthew W. Lampe*

Matthew W. Lampe
mwlampe@jonesday.com
Karen Rosenfield
krosenfield@jonesday.com
JONES DAY
250 Vesey Street
New York, New York 10281
Tel: 212.326.3939
Fax: 212.755.7306

Deborah A. Sudbury (*pro hac vice*)
dsudbury@jonesday.com
Craig S. Friedman
csfriedman@jonesday.com
JONES DAY
1420 Peachtree Street, N.E.
Suite 800
Atlanta, Georgia 30309
Tel: (404) 521-3939
Fax: (404) 581-8330

*Attorneys for Defendants*