UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**REDACTED VERSION**

-------------------------------------------------------x
ROSS SCHUCKER, EDWARD FRYAR,
VIRGILIO VALDEZ, TOM SHAFFER,
STEVEN HEINRICH and SHANE BOWER
on behalf of themselves and all other
employees similarly situated,

Case No. 7:16-cv-3439

                            Plaintiffs,

     -against-

FLOWERS FOODS, INC., LEPAGE BAKERIES
PARK ST., LLC, C.K. SALES CO., LLC
and JOHN DOE 1-10,

                            Defendants.
-------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO AMEND COMPLAINT

-on the brief-

Randy J. Perlmutter
Gary S. Graifman

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
ROSS SCHUCKER, EDWARD FRYAR,
VIRGILIO VALDEZ, TOM SHAFFER,
STEVEN HEINRICH and SHANE BOWER          Case No. 7:16-cv-3439
on behalf of themselves and all other
employees similarly situated,

                         Plaintiffs,

        -against-

FLOWERS FOODS, INC., LEPAGE BAKERIES
PARK ST., LLC, C.K. SALES CO., LLC
and JOHN DOE 1-10,

                         Defendants.
-------------------------------------------------------x

# MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND IN FURTHER SUPPORT OF PLAINTIFFS' MOTION TO AMEND COMPLAINT

-on the brief-

Randy J. Perlmutter
Gary S. Graifman

## TABLE OF CONTENTS

INTRODUCTORY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.   THE RECORD SHOWS PLAINTIFFS WERE NOT
     INDEPENDENT, WERE SUBJECT TO DEFENDANTS'
     SIGNIFICANT CONTROL AND INTEGRAL TO AND
     DEPENDANT UPON DEFENDANTS' ECONOMIC SUCCESS . . . . . . . . . . . . . . . . . 2

     A.   Defendants Created A Scheme To Convert Plaintiffs,
          Who Were Already Employees Delivering Products
          For Defendants, Into Independent Contractors . . . . . . . . . . . . . . . . . . . . . . . . . 2

     B.   Defendants Retained Substantial And, Often, Unilateral
          Control Over The Employment Relationship Beyond
          Their Agreements . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

     ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

II.  SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE
     DISPUTES OF MATERIAL FACTS EXIST WHICH
     PRECLUDE DISMISSAL . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

III. ALL NAMED DEFENDANTS HAVE LIABILITY AS
     JOINT EMPLOYERS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

IV.  THE EVIDENCE DEMONSTRATES THAT GENUINE
     ISSUES OF FACT EXIST ON PLAINTIFFS' PROPERLY
     STATED CLAIMS FOR DEFENDANTS' FAILURE
     TO PAY OVERTIME . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

     A.   Plaintiffs Were Intentionally Misclassified As
          Independent Contractors Under The FLSA . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          1.   Defendants Exercised Substantial Control Over
               Plaintiffs' Job Duties . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

          2.   Defendants Financed Plaintiffs' Business And Its
               Practices Suppressed Plaintiffs' Ability To
               Profit From The Enterprise . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

          3.   Plaintiffs' Work Did Not Require Special
               Skills Or Initiative . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

4. The Employment Relationship Was Full-Time
And Open-Ended In Duration ................................. 18

5. Plaintiffs' Work Is Integral To the Survival
Of Defendants' Business ................................... 19

B. Plaintiffs Were Intentionally Misclassified Employees
Under The NYLL .............................................. 19

1. Plaintiffs Could Not Work At Their Convenience
And Defendants Required Them To Work
Seven Days Per Week And Were Subjected
To Defendants' Work Schedule Requirements .................... 22

2. Plaintiffs Were Unable To Engage in Other Work ................. 22

3. Plaintiff Were Not On Defendants' Payroll And Did
Not Receive Benefits But Only Because Defendants
Insisted On The Intentional Misclassification .................... 23

V. PLAINTIFFS WERE NOT EXEMPT FROM
OVERTIME REQUIREMENTS .......................................... 24

A. Plaintiffs Are Not Exempt Under
The Motor Carrier Exemption ....................................... 24

B. Plaintiff Valdez Did Meet The Requirements
Of The Outside Sales Exemption From
June, 2015 to January, 2016 ........................................ 26

C. Plaintiffs Will Prevail On Their New York Labor
Law Claim For Unlawful Deductions ................................ 27

D. Questions of Fact Preclude Summary Judgment
In Defendants' Favor On Plaintiffs' ERISA Claims ..................... 27

E. Plaintiffs Can Demonstrate Unjust Enrichment
And The Releases Some Plaintiffs Signed
Are Not Binding And Contrary to Public Policy ........................ 30

F. The Court Should Grant Plaintiffs' Motion
To Amend The Pleadings ........................................... 31

1. Fed. R. Civ. Proc. Rule 15 Is Liberally
Considered And Should Apply to This Case ...................... 31

2.    Plaintiffs Have Good Cause For The
      Complaint To Be Amended Because
      The Claims Are Viable And There Has
      Not Been Any Undue Delay Or Prejudice ........................ 32

3.    The Amendment Is Not Futile ................................. 33

4.    There Has Been No Undue Delay In
      Seeking Leave To Amend And Defendants
      Are Not Prejudiced By The Amendment ......................... 33

      A.    There Has Been No Undue Delay ........................ 33

      B.    There Is No Undue Prejudice to Defendants ............... 34

CONCLUSION ...................................................... 35

## TABLE OF AUTHORITIES

**CASES**                                                                                                        **PAGE(S)**

*Ansoumana v. Gristede's Operating Corp.,*
   255 F.Supp.2d 184, 190 (S.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Arena v. Delux Transp. Servs., Inc.,*
   No. 12-cv-1718, 2013 WL 654418,
   at *2, 7-8, 12 (E.D.N.Y. Feb. 15, 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 11, 12, 16

*Barfield v. N.Y.C. Health & Hosps. Corp.,*
   537 F.3d 132, 141-143 (2d Cir. 2008) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8, 9

*Bd. of Ed of Hudson City School Dist. v. Sargent, Webster, Crenshaw & Folley,*
   146 A.D.2d 190, 196 (3d Dep't 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

*Berger v. AXA Network, LLC,*
   No. 03 C 125, 2003 U.S. Dist. LEXIS 11555, 1t *8-9 (N.D. Ill. July 3, 2003) . . . . . . . . 30

*Bilyou v. Dutchess Beer Distribs., Inc.,*
   300 F.3d 212, 229 (2d Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

*Brennan v. Bally Total Fitness,*
   153 F.Supp.2d 408, 416 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Brock v. Superior Care, Inc.,*
   840 F.2d 1054, 1058-59, 1060-61 (2d. Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 17

*Browning v. Ceva Freight, LLC,*
   885 F.Supp.2d 590, 599 (E.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10, 12, 17

*Bynog v. Cipriani Grp., Inc.,*
   1 N.Y.3d 193, 198 (2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19, 20

*Campos v. Zopounidis,*
   2011 WL 2971298, at *7 (D. Conn. July 20, 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Carter v. Dutchess Cmty. Coll.,*
   735 F.2d 8, 12 (2d Cir. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 10

*Deboissiere v. Am. Modification Agency,*
   No. 09-cv-2316 (JS)(MLO), 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010) . . . . . . . . . . 20

*DePace v. Matsushita Elec. Corp. of Am.,*
   257 F.Supp.2d 543, 560 (E.D.N.Y. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

*Dilworth v. Goldberg,*
   914 F.Supp.2d 433, 460 (S.D.N.Y. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

Doe v. Pataki,
   32 F.Supp.2d 456, 473-474 (S.D.N.Y. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

*E. Coast Indus., Inc. v. Becconsall,*
   60 Misc.2d 84, 301 N.Y.S.2d 778, 779-80 (N.Y.Dist.Ct. 1969) . . . . . . . . . . . . . . . . . . . 20

*Ethelberth v. Choice Sec. Co.,*
   91 F. Supp.3d 339, 351-52 (E.D.N.Y. 2015) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Fernandez v. Kinray, Inc.,*
   2014 WL 7399303 at *4, No. 13-cv-4938 (E.D.N.Y. Dec. 30, 2014) . . . . . . . . . . . . 16, 17

*Finz v. Schlesinger,*
   957 F.2d 78, 81-82 (2d Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

*Garcia v. W. Waste Servs., Inc.,*
   969 F.Supp.2d 1252 (D. Idaho 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25, 26

*Gitlitz v. Compagnie Nationale Air Fr.,*
  129 F.3d 554, 559 (11th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
*Goldberg v. Whitaker House Corp. Inc.,*
  366 U.S. 28, 33, 81 S.Ct. 933 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9, 33
*Gould Investors, LP v. Travelers Cas. & Surety Co. of America,*
  83 A.D.3d 660, 920 N.Y.S.2d 395 (2d Dep't 2011) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
*Grace v. Rosenstock,*
  228 F.3d 40, 53-54 (2d Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34
*Gross v. Sweet,*
  49 N.Y.2d 102, 106, 424 N.Y.S.3d 365, 367 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . 31
*Gustafson v. Bell Atl. Corp.,*
  171 F.Supp.2d 311, 326 (S.D.N.Y. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
*Hamilton v. Newburgh-Beacon Bus Corp.,*
  2014 WL 7398908 (S.D.N.Y. Dec. 4, 2014) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*Hart v. Rick's Cabaret Int'l, Inc.,*
  967 F.Supp.2d 901, 924 (S.D.N.Y. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 23
*Herman v. RSR Sec. Servs. Ltd.,*
  172 F.3d 132, 139 (2d Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Hernandez v. Alpine Logistics, LLC,*
  No. 08-cv-6254T 2011 WL 3800031 at *5 (S.D.N.Y. Aug. 29, 2011) . . . . . . . . . . . . . 25
*IIG Capital, LLC v. Archipelago, LLC,*
  36 A.D.3d 401, 404-405 (1st Dep't 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
*In the Matter of Barrier Window Systems, Inc.,*
  149 A.D.3d 1373 (3d Dept. 2017) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
*In the Matter of Pepsi Cola Buffalo Bottling Corporation.,*
  144 A.D.2d 220, 534 N.Y.S.2d 532 (3d Dept. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*In re Claim of Kelly,*
  28 A.D.3d 1044, 1045 (3d Dept. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*In re Claim of Schaimberg,*
  285 A.D.359, 361 (3d Dept. 1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*In re Currency Conversion Fee Antitrust Litig.,*
  361 F.Supp.2d 237, 250 (S.D.N.Y. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*In re Hertz Corp.,*
  2 N.Y.3d 733, 735, 926 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24
*In re Pepsi Cola Bottling Corp.,*
  144 A.D.2d at *222 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
*Kennedy v. Empire Blue Cross & Blue Shield,*
  989 F.2d 588, 594, 595 (2d Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 29
*Kinney v. Artist & Brand Agency, LLC,*
  2015 WL 10714080 at *16 (S.D.N.Y. Nov. 25, 2015) . . . . . . . . . . . . . . . . . . . . . . . 18, 19
*Kirkendall v. Halliburton, Inc.,*
  707 F.3d 173, 179 (2d Cir. 2013) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*Klos v. Polskie Linie Lotnicze,*
  133 F.3d 164, 168 (2d Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*Knoll, Inc. v. Moderno, Inc.,*
  2012 WL 3613896 at*1 (S.D.N.Y. Aug. 22, 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Krackow v. Jack Kern Profit Sharing Plan,*
  2002 U.S. Dist. LEXIS 20524, at *13 (E.D.N.Y. May 29, 2002) .................. 29
*Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan,*
  935 F.2d 1360, 1365-66 (2d Cir. 1991) ...................................... 29
*Local 777, Democratic Union Organizing Committee, Seafarers Intern.*
*Union of North America, AFL-CIO v. N.L.R.B.,*
  603 F2d 862, 879 (D.C. Cir. 1978) ......................................... 16
*Lopez v. Acme Am Envil, Co.,*
  No. 12 Civ. 511(WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012) .......... 8
*Lynn's Food Stores, Inc. v. United States,*
  679 F.2d 1350, 352 (11th Cir. 1982) ....................................... 31
*Margel v. E.G.L. Gem Lab Ltd.,*
  No. 04 Civ. 1514, 2010 WL 445192, at *11 (S.D.N.Y. Feb. 8, 2010) ............. 34
*Masson v. Ecolab, Inc.,*
  2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005) ................................. 25
*Matter of Field Delivery Serv. [Roberts],*
  66 N.Y.2d 516, 521 ....................................................... 21
*Matter of Oakes [Stroehman Bakeries–Roberts],*
  137 A.D.2d 927 ........................................................... 21
*Matter of Rivera [State Line Delivery Serv.–Roberts],*
  69, N.Y.2d 679, 481 U.S. 1049 ............................................. 21
*Matter of Ted Is Back Corp.,*
  64 N.Y.2d 725, 726 (1984) ................................................ 19
*Murphy v. ERA United Realty,*
  251 A.D.2d 469, 470-71, 674 N.Y.S.2d 415 (2d Dept. 1998) .................... 20
*NLRB v. Associated Diamond Cabs,*
  702 F.2d 912, 924 (11th Cir. 1983) ........................................ 16
*Nationwide Mut. Ins. Co. v. Darden,,*
  503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992) .................... 8
*Nunn v. Mass. Cas. Ins. Co.,*
  758 F.3d 109, 114 N. 4 (2d Cir. 2014) ...................................... 7
*Padovano v. FedEx Ground Package System, Inc.,*
  2016 WL 7056574 (W.D.N.Y. Dec. 5, 2016) ................................. 33
*Perfect Dental, PLLC v. Allstate Inc. Co.,*
  538 F.Supp.2d 543, 548 (E.D.N.Y. 2007) ................................... 21
*Rambarran v. Mount Sinai Hosp.,*
  2008 WL 850478 at *3 (S.D.N.Y. Mar. 28, 2008) ............................ 32
*Robinson v. Day,*
  103 A.D.3d 584, 586-587 (1st Dept. 2013) .................................. 30
*Rosenthal v. Bologna,*
  211 A.D.2d 436, 438, 620 N.Y.S.2d 376, 378 (1st Dept. 1995) .................. 31
*Saleem v. Corp. Transp. Group, Ltd.,*
  854 F.3d 131 (2d Cir. 2017) ............................................... 11
*Sandrino v. Michaelson Assocs., LLC,*
  No 10 Civ. 7897 (BSJ), 2012 WL 5851135 (S.D.N.Y. Nov. 19, 2012) ............ 23
*Schwind v. EW & Associates, Inc.,*
  357 F.Supp.2d 691, 702 (S.D.N.Y. 2005) ................................... 18

*Seaman v. Arvida Realty Sales,*
   985 F.2d 543, 547 (11ᵗʰ Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30
*Sharkey v. Ultramar Energy Ltd.,*
   70 F.3d 226, 231 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*Topo v. Dhir,*
   No. 01 Civ. 10881(PKC), 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004) . . . . . . . . 19
*Velez v. Sanchez,*
   693 F.3d 308, 327 (2d Cir. 2012) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Velu v. Velocity Exp., Inc.,*
   666 F.Supp.2d 300, 3007-08 (E.D.N.Y. 2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
*Willard Van Dyke Productions, Inc. v. Eastman Kodak Co.,*
   12 N.Y.2d 301, 304, 239 N.Y.S.2d 337, 339-40 (1963) . . . . . . . . . . . . . . . . . . . . . . . . . 31
*Wilson v. Corelogic Saferent, LLC,*
   2016 No. 14-cv-2477 (JPO) WL 482986 (S.D.N.Y. Feb. 8, 2016) . . . . . . . . . . . . . . . . . 32
*Wolters Kluwer Fin. Services, Inc. v. Scinatage,.,*
   2007 WL 1098714 at *1 (S.D.N.Y. April 12, 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
*Yak v. Bank Brussels Lambert,*
   252 F.3d 127, 131 (2d Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29
*Yellow Taxi Co. of Minneapolis v. N.L.R.B.,*
   721 F.2d 366 (D.C. Cir. 1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
*Zheng v. Liberty Apparel Co.,*
   355 F.3d 61 (2d Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10,11
*Zipf v. Am. Tel. & Tel. Co.,*
   799 F.2d 889, 893 (3d Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

STATUTES

20 N.Y.C.R.R. § 2380.3 (b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

29 U.S.C.A. § 203 (d), (e)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 29

Employment Retirement Income Security Act . . . . . . . . . . . . . . . . . . . . 1, 2, 27, 28, 29, 30

Fair Labor Standards Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 9, 12, 19, 24, 25, 27, 31

New York Labor Law . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 4, 9, 19, 20, 23, 24, 27

New York State Commercial Goods
Transportation Fair Play Act . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 33

Technical Corrections Act of 2008 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 26

RULES

Federal Rule of Civil Procedure 15(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 32

Federal Rule of Civil Procedure 16(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Federal Rule of Civil Procedure 56(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

## INTRODUCTORY STATEMENT

Plaintiffs were bakery product delivery drivers who one day were working as employees performing product delivery and merchandising duties and the next, were required to enter into independent contractor agreements under threat of losing their jobs. Defendants' motion attempts to divert attention away from the inescapable conclusion that Defendants created a business model that shifted the heavy responsibility of operating these delivery routes to Plaintiffs with promises that they would be able to run their own independent business. These promises were illusory. Instead, Plaintiffs continued to perform the same day-in, day-out job duties they did as employees, remaining under Defendants' strict and often unilateral controls. Plaintiffs were intentionally misclassified as independent contractors in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL"). Plaintiffs claim record-keeping violations as well as a cause of action under the New York State Commercial Good Transportation Industry Fair Play Act ("Fair Play Act").  Defendants illegally interfered with and denied Plaintiffs benefits under the Employment Retirement Income Security Act ("ERISA"). All of these claims hinge upon the threshold question of Plaintiffs' proper classification.[1]

The factual record and objective evidence plainly demonstrates that Defendants intentionally misclassified Plaintiffs. Defendants' controls, supervision and discipline deprived Plaintiffs of any independence whatsoever.  Therefore, summary judgment is improper and Plaintiffs' claims, as amended, should proceed.  (See Dkt. No 95-3).

## PROCEDURAL HISTORY

On May 10, 2016 Plaintiffs filed a complaint, later amending same, alleging under the FLSA that they and other distributors were misclassified as independent contractors and, as a result, are owed unpaid overtime.  (Dkt. 23 and attached Ex. 22 ("Complaint"). Plaintiffs also

---

[1] Thus, all of the factual discovery for these claims is virtually identical and scant discovery, if any, needs to be conducted to have this case ready for class certification.

brought individual claims for (i) overtime and improper deductions under the NYLL, (ii) benefits under ERISA, and (iii) unjust enrichment. (Dkt.1). Plaintiffs allege that they and other New York distributors were subject to a common unlawful policy. (Dkt. 1 at ¶¶ 32, 37, 49).

On October 19, 2016, the Court signed the parties' original scheduling order that did not provide a deadline by which to file amended pleadings. (Dkt.43). On November 23, 2016, Plaintiffs moved for conditional certification of an FLSA opt-in class of New York distributors. (Dkt. 44). That motion was recently terminated by the Court without prejudice. (Dkt. 103).

On December 9, 2016, Defendants moved for judgment on the pleadings as to the ERISA and unjust enrichment claims. On May 24, 2017, the Court denied Defendants' motion without prejudice. (Dkt. 91). On June 22, 2017, Plaintiffs filed their motion for leave to amend the pleadings to include a NYLL class and to add a cause of action under the Fair Play Act.

## I.   THE RECORD SHOWS PLAINTIFFS WERE NOT INDEPENDENT, WERE SUBJECT TO DEFENDANTS' SIGNIFICANT CONTROL AND INTEGRAL TO AND DEPENDENT UPON DEFENDANTS' ECONOMIC SUCCESS

### A.   Defendants Created A Scheme To Convert Plaintiffs, Who Were Already Employees Delivering Products For Defendants, Into Independent Contractors

Plaintiffs were employees, delivering bakery products and performing merchandising duties for Defendants (through third party companies) when Defendants informed them that they would no longer have the option of remaining employees. (Schucker Dep. 54:15-55:11[2], Valdez Dep. 30:19-31:2, Bower Dep. 29:7-23, Heinrich Dep. 47:5-6, Fryar Dep. 26:5-2, Shafer Dep. 34:16-25). Instead, Defendants gave Plaintiffs a "Sophie's choice": enter into non-negotiable agreements classifying them as independent contractors or lose their livelihood. (56.1 ¶¶ 1, 3, 23, 52, 83, 150, 186).[3] Defendants hurriedly presented a "sales pitch" over three Wednesdays, the last of which was when Plaintiffs had to commit to becoming distributors. ████████████

---

[2] All references to "___Dep. and Ex:" are excerpts from transcripts of deposition testimony and Exibits, all of which are attached to Randy J. Perlmutter's Declaration submitted herewith.

[3] All references to "56.1" refer to Plaintiffs' Opposing Statement of Disputed Material Facts pursuant to Local Rule 56.1 in Opposition to Defendants' Motion for Summary Judgment filed simultaneously herewith.

████████ 56.1 ¶¶ 14, 21). Thus, within a few weeks, and not of their own initiative, Plaintiffs went from being employees to "business owners" saddled with the heavy responsibility and liability of running these routes with none of the benefits they would have otherwise received as employees. (Id, Linthicum Dep. 16:2-7, ████████████ ¶ 16.1).  Defendants' ████████

████████████████████████████████████████████████████████████

████████████████████████████████ (56.1 ¶¶ 1, 3, 4, 56, 83, 113).  Plaintiffs had██

████████████████████████████████████████████████████████████

████████████████ Linthicum Dep. 72:13-73:10, Schucker Dep. 132:3-7)  Plaintiffs were forced to sign non-negotiable Distributor Agreements ("Agreements") that by their terms alone bound Plaintiffs to Defendants' strict controls and supervision.  (████████████ 56.1 ¶ 3, 6(a)-(p), Linthicum Dep. 72:13-73:10, 124:15-16, 125:4-16).  Defendants offered ████████████████

████████████████████████████████████████████████████████

(Linthicum Dep. 72:13-73:10, ████████████).

  Defendants' Agreements are identical except for the geographical territory and store composition and sales volume.  (Linthicum Dep. 25:17, 26:20). Defendants dictated to all Plaintiffs the following agreement terms without negotiation under pain of termination:



(i) ███████████████████████████████ (¶¶ 3.1, 15.1);[5]
(ii) ██████████████████████████████████ (¶ 2.3);
(iii) ████████████████████████████████████ (¶ 4.1);
(iv) █████████████████ (¶ 3.3);
(v) ████████████████████████████████████ (¶ 7.1);
(vi) ███████████████████████████ (¶ 5.1);
(vii) █████████████████████████████ (¶ 8.4);[6]

---

[4] Power point "sales pitch" presentation given to Plaintiffs regarding the mandatory transition from employee to independent contractor.  (Hereinafter, the "sales pitch.")
[5] Defendants also █████████████████████████████████████████ (¶ 8.6).
[6] Hereinafter chain stores or large volume stores.

3

(viii)  (¶ 8.1);

(ix) (¶¶ 9.1, 9.2);

(x) (¶¶ 10.1, 10.2);

(xi)
(xii) (¶ 12.2);

(xiii) (¶ 13.2);

(xiv) (¶ 15.1, 15.3);

(xv) (¶¶ 17.2, 17.3);

(xvi) (¶ 20.6);

(xvii) (¶ 20.7).

**B. Defendants Retained Substantial And, Often, Unilateral Control Over The Employment Relationship Beyond Their Agreements**

When the "economic realities" test under the FLSA, or the substantially similar "control" test under the NYLL, is applied to Plaintiffs, there is clear objective evidence that Defendants retained significant, often unilateral, control over Plaintiffs day-to-day activities.[8]  Plaintiffs could not choose when they wanted to work.  Their new jobs required mandatory seven days per week attention which precluded them from being able to perform other work.[9]  (56.1 ¶ 6(h), 6(i), 71, Linthicum Dep. 212:12-13, ███ ).  Thus, Plaintiffs could not turn down assignments because of the seven day per week requirement of the job and if they needed to take time off, they had to pay someone to assist them or obtain Defendants' approval to pay for replacement coverage.  56.1 ¶ 6 (j), 12, 70, 92, 155, ███ ).

---

[7] These are small, local stores, ███████████████.
[8] These areas included ████████████████████████████ (Ex. 2, Agreements, Ex. 9-16, 18).
[9] This obstacle was in addition to ████████████████████ (¶ 5.1).

Defendants negotiated directly with all chain stores to Plaintiffs' exclusion[10] with respect



56.1 ¶ 6(d)(9)).  Defendants enforced these

requirements ████████████████████████████████████.

If Plaintiffs did not adhere to what Defendants defined as "good industry practice," which

included adhering to Defendants' mandatory service schedule, Plaintiffs would receive

disciplinary breach letters that could lead to the forfeiture of their "businesses."[11] (████

Agreement ¶ 2.6, ███████, 56.1 ¶ 6(g)).  In sum, Plaintiffs continued, in all aspects, to be

employees, under Defendants' strict controls.[12]  (56.1 ¶ 3, 5, ███████).

Defendants attempt to differentiate Plaintiffs' individual situations in opposition to this

motion which, when properly examined, fails.  Just as when they were employees, Plaintiffs had

different geographical territories so not each route serviced the exact stores, although there was

substantial overlap of customers.  (e.g., ████████████).  Not all sales volumes were the

same, depending on the composition of the route.  (████).  Thus, each Plaintiff had a slightly

different workload and service schedule so they could plan their day in a geographical sensible

way, just as they did were employees.[13]  This does not qualify as "independence."  They were

subject to the same mandated job requirements, controls and penalties and did not have

autonomy over their schedules.  (Ex. 9-16, Ex. 12, Agreements).

---

[10] These chain stores such as ████████████████████████████████████████████ 56.1 ¶ 36, 56, 93, Shafer Dep. 76:11-24, 86:24-87:6).

[11] Linthicum personally ████████████████████. (Linthicum Dep. 150:11-25, 202:1-4). ████ ████████████████████████████████████████████. (Ex. 16).  Defendants then can, at their option, ████████████████████████, ¶ 8.1).  Conversely, when Plaintiffs were employees, they were not subject to fines.  Neither are the current employee drivers.  (Linthicum Dep. 215:17-218:18).

[12] ████████████████████████████████████████████████████ , Linthicum Dep. 22:17-23:24, 89:6-90:8, 56.1 ¶ 5).

[13] E.g., Schucker Dep. 61:5-11, 32:3-7, 71:13-24, Valdez Dep. 38:19-39:15, Heinrich Dep. 49:19-22, 50:10-17, Shafer Dep. 40:23-41:51.



Defendants ███████████████████████████████████████████

███████████████████████████████████████████████

███████ █ ██████████ Because the majority of product sold was ████████ [14],

████████████████████████████ [15] ████████████████

██████████████████████████████████████████████

████████████████████. (Id., ███████, 56.1 ¶ 6 (h), 11, 170-172). This

kept competitors out of the particular store which was helpful to Defendants but which did

nothing to increase Plaintiffs' sales. (56.1 ¶ 6(a), 11, 170-172). It was a vicious cycle.

Defendants charged Plaintiffs if they exceeded the amount of expired product that did not sell

and was returned to the warehouse ("stale product"), and it was Defendants who arbitrarily set

and modified the "stale percentage" over which Plaintiffs were charged. Defendants concede

Plaintiffs often complained about this issue. (56.1 ¶ 10, 11, 76, 125, 136 ███████████,

¶12.2, ███████).

As employees, Plaintiffs were only required to work five days per week and could

voluntarily work more. (███████, Schucker Dep. 169:25-170:17, Valdez Dep. 39:9-15). As

distributors, Defendants require Plaintiffs to work seven days per week. (56.1 ¶ 6(h), 12, 36 56,

89, 92, 118, ███████). As employees, Plaintiffs had paid time off and Defendants would bear the

cost of coverage. (Linthicum Dep. 40:20-41:12, 101:1-7). As distributors, Plaintiffs would have

to bear the cost of coverage for any time off. (56.1 ¶12, 34, 70, 71, 92, 116). Thus, Plaintiffs

had to reach into their pockets to enlist help from time to time due to illness or otherwise under

the Agreement's terms. (███████████████, ¶ 16.2). These minor variances are the only points

---

[14] An overwhelming majority of Plaintiffs' sales came from stores that had set plan-o-grams where Defendants negotiated the space and the product to be sold directly to the stores and where Plaintiffs had no sales impact. (56.1 62, 63, 74, Linthicum Dep. 36:7-21, 37:708, 63:10-13, 64:2-18, 140:5-25, "there is normally a mapped area of the aisle for each brand determined by the store."). Over a representative twelve week sample Plaintiffs' sales from these stores averaged over 90% of their total sales. (Ex. 20).

[15] Hanniford, for example, required 140 products to be stocked. (Schucker Dep. 285:13-20, 286:5-21).

that Defendants attempt to rely upon to show that Plaintiffs are "independent." However, these points are dwarfed by the controls and supervision Defendants exercised. (███████████ ██████████).

Plaintiffs are completely reliant on Defendants' business to be successful and vice versa. (Linthicum Dep. 202:14-22). Defendants did not have any objective criteria for who became a distributor and had no requirements regarding any particular skills or training. (███████ ███[16]). No special skill or training was required. (eg., 56.1 ¶ 155-157) Yet, Plaintiffs were an integral part of Defendants' success and Defendants relied on that business alone for their survival. Distributing bakery products is Defendants' business. (Linthicum Dep. 202:14–22).

## ARGUMENT

## II.   SUMMARY JUDGMENT SHOULD BE DENIED BECAUSE DISPUTES OF MATERIAL FACTS EXIST WHICH PRECLUDE DISMISSAL

Summary judgment should be denied because, at a bare minimum, numerous factual issues exist that preclude dismissal of Plaintiffs' claims as a matter of law.

Summary judgment may not be granted unless all of the submissions taken together "show[ ] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed.R.Civ.P. 56(a)*. The moving party bears the burden of demonstrating the absence of a material factual question, and in making this determination, the court must view all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Nunn v. Mass. Cas. Ins. Co.,* 758 F3d 109, 114 N. 4 (2d Cir. 2014). Plaintiffs have demonstrated that there exist a multitude of facts related to their job classification so that summary judgement should be denied.

---

[16] Not coincidentally, the one area that Defendants did not impose strict control was to allow Plaintiffs to enlist help to service their routes. (Agreement, ¶ 16.2). However, Defendant required that any helpers Plaintiffs used to comply with "good industry practice" so they retained indirect control in that way. *Id.* ¶2.6

7

### III.   **ALL NAMED DEFENDANTS HAVE LIABLITY AS JOINT EMPLOYERS**

The evidence demonstrates factual questions exist that if ultimately proven, that all Defendants have joint liability for these claims.[17] Whether Defendants are simply making a gratuitous statement or hoping to use same as an improper, back-door attempt to make a related argument in their reply, the attempt fails. There are thousands of pages of documents that point to Flowers' and LePage's control over Plaintiffs' job functions.[18] (e.g., by way of example see

███████████████████████████████████████████████████████

██████  Ex. 10, 11, 14, 14).[19]

On the issue of joint employers by Flowers/Lepage/CKSales, there are clear questions of fact and Defendants do not argue to the contrary. Notably, "[t]he 'striking breadth' of the FLSA's definition of 'employ' 'stretches the meaning of 'employee' to cover some parties who might not qualify as such under a strict application of traditional agency law principles.' *Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132, 141 (2d Cir.2008) (quoting *Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326, 112 S.Ct. 1344, 117 L.Ed.2d 581 (1992)).

"When it comes to 'employer' status under the FLSA, control is key." *Lopez v. Acme Am. Envtl. Co.,* No. 12 Civ. 511(WHP), 2012 WL 6062501, at *3 (S.D.N.Y. Dec. 6, 2012). Therefore, to the extent that Defendants raise the issue in the context of this motion, summary judgment should be denied as to each Defendant.

---

[17] Defendants' Brief includes a one sentence footnote claiming that neither Flowers or Lepage have direct written contracts with Plaintiffs. Defts. Br. p. 4, fn 1.

[18] Due to the substantial volume of documents Defendants produced in discovery, and to avoid duplication and the waste of judicial time and resources, Plaintiffs only attach representative samples of documents within each individual example cited herein.

[19] All of these Exhibits contain multiple communications, policies and directives from Flowers and Lepage evidencing their strict controls over Plaintiffs.

## IV. THE EVIDENCE DEMONSTRATES THAT GENUINE ISSUES OF FACT EXIST ON PLAINTIFFS' PROPERLY STATED CLAIMS FOR DEFENDANTS' FAILURE TO PAY OVERTIME

### A. Plaintiffs Were Intentionally Misclassified As Independent Contractors Under The FLSA

Defendants intentionally misclassified Plaintiffs as independent contractors. "[W]hether an employer-employee relationship exists for purposes of the FLSA should be grounded in 'economic reality rather than technical concepts.'" *Barfield,* 537 F.3d at 141 (quoting *Goldberg v. Whitaker House Coop., Inc.,* 366 U.S. 28, 33, 81 S.Ct. 933 (1961)). "Employment" under the FLSA is "to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield,* 537 F.3d at 141–42. "Above and beyond the plain language, moreover, the remedial nature of the statute further warrants an expansive interpretation of its provisions so that they will have 'the widest possible impact in the national economy.'" *Herman v. RSR Sec. Servs. Ltd.,* 172 F.3d 132, 139 (2d Cir.1999) (quoting *Carter v. Dutchess Cmty. Coll.,* 735 F.2d 8, 12 (2d Cir.1984)). For purposes of the FLSA, independent contractor status is governed by an "economic realities" test. *Brock v. Superior Care, Inc.,* 840 F.2d 1054, 1058-59 (2d. Cir. 1988). The Second Circuit has developed and applies this five factor test to determine employment status.[20] The factors include: "(1) the degree of control exercised by the employer over the workers, (2) the workers' opportunity for profit or loss and their investment in the business, (3) the degree of skill and independent initiative required to perform the work, (4) the permanence or duration of the working relationship, and (5) the extent to which the work is an integral part of the employer's business." *Barfield,* 537 F.3d at 142–43. See also, *Velez v. Sanchez,* 693 F.3d 308, 327 (2d Cir.2012) (stating that the *Brock* test is "relevant for distinguishing between independent contractors and employees"); *Arena v. Delux Transp. Servs., Inc.,* No. 12–CV–

---

[20] *Browning v. Ceva Freight LLC,* 885 F.Supp.2d 590, 599 (E.D.N.Y. 2012) (same test). The test under New York law involves the same factual inquiry. "This analysis is slightly different than the inquiry under the NYLL, discussed *infra,* but is nevertheless substantially similar. The first factor is essentially identical to the relevant inquiry under the NYLL, but focuses on other key factors as well."

1718, 2013 WL 654418, at *2 (E.D.N.Y. Feb. 15, 2013) (utilizing the same test); *Browning,* 885 F.Supp. at 599. Analyzed under these factors, Plaintiffs are clearly employees or, at minimum, questions of fact exist which preclude summary judgment.

### 1. Defendants Exercised Substantial Control Over Plaintiffs' Job Duties

Defendants controlled virtually every facet of Plaintiffs' activities. Not "some" control as even Defendants seem to concede. It was substantial, and often unilateral control over all the core tenets of the job requirements that had the effect of chilling Plaintiffs' ability to make a living commensurate with the work they perform. (Ex. 2, Agreements, ¶ 9-16, 18).

There is no "rigid rule" for determining whether an employer-employee relationship exists; indeed, "[t]he Second Circuit has applied slightly different factors in different types of cases." *Arena, Inc.,* 2014 WL 794300, at *7-8. For example, in a case evaluating whether a prisoner who tutored in a community college's class program at prison was an employee covered by the FLSA, the Second Circuit considered "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter v. Dutchess Cmty. Coll.,* 735 F.2d at 12, (citation and internal quotation marks omitted).

In another case, *Zheng v. Liberty Apparel Co.,* 355 F.3d 61 (2d Cir. 2003), which evaluated whether a garment manufacturer was a joint employer of garment workers hired as subcontractors, the Second Circuit applied factors which "indicate that an entity has functional control over workers even in the absence of ... formal control." *Id.* at 72. Those factors include:

> (1)[W]hether [the defendant's] premises and equipment were used for the plaintiffs' work; (2) whether the [direct employer] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line job that was integral to [the defendant's] process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [defendant] or [its] agents supervised

10

plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [defendant].

*Id.; see also Arena,* 2014 WL 794300, at *8.

Here, Defendants wielded significant control over every area of the working relationship which precludes summary judgment. (Ex. 2, Agreements, 9-16, 18).

Defendants' cases are clearly distinguishable from this matter. A comparison of the facts in those cited cases demonstrates quite clearly that summary judgment here is not proper. In *Saleem v, Corp. Transp. Group, Ltd.,* 854 F3d 131 (2d Cir. 2017),[21] the plaintiffs were black-car drivers who owned or operated black-car dispatch bases in New York. *Id.* at 135. They did so pursuant to franchise agreements that expressly state the "Franchisees are not Franchisor's employee and ...shall at all times be free from the control and direction of the Franchisor." *Id.* at 136. However, the similarities to this case end there. The drivers possessed considerable autonomy in their day-to-day affairs and had multiple ways of securing fares. The drivers were not prohibited from transporting other clients for competing companies. *Id.* Drivers also determined when and how often to drive and the record of that case reflects that the drivers chose to work different amounts of time without providing notice to the defendants. *Id.* at 137-138. The drivers were able to select which geographical area that the wanted to work and were at liberty to – and did – decline jobs that were offered to them. *Id.* Most of those drivers worked for competing companies and were free during the day to go back and forth, working between different companies. *Id.* Finally, plaintiffs took home almost 85% of the fares. *Id.* Conversely, here, none of these factors exist for Plaintiffs who were subjected to substantially more control. (*See, e.g.,* Plaintiffs' brief p. 4-5).

---

[21] Deft. Brief at 10.

Similarly, in *Browning*, 885 F.Supp.2d 590,[22] the plaintiffs could and did reject assignments without penalty. They could also select their assignments based upon what time of day they wanted to work and "whether they thought it was worth the time and money." *Id.* at 593. The drivers determined the method, manner and means of performing their duties. *Id.* They were free to work for other competing companies. *Id.* They were not supervised by defendants or their agents. *Id.* These factors were critical to the ruling in that case and none of them are applicable to Plaintiffs here where Plaintiffs had no autonomy over their core duties.

In contrast, the Court denied summary judgment on the misclassification issue in an FLSA case where there were significantly less controls exercised by Defendants here. *Arena*, 2014 WL 1427907 at * 7. The court held:

> In sum, while some factors indicate that [the plaintiff] was [the defendant's] employee, *e.g.,* the degree of control exercised by [the defendant] , and the opportunity for profit and loss, other factors suggest that [the plaintiff] was an independent contractor, *e.g.,* the lack of permanence of the relationship, and the fact that [the plaintiff's] responsibilities could be passed to other employees. Accordingly….the totality of the circumstance demonstrate that a triable issue of fact exists…" *Id.*

In this case, Defendants wielded control over virtually all of Plaintiffs' job duties and as a result, their ability to earn money by virtue of the Agreements alone.[23] Pursuant to Defendants'

██████████████████████████████████████████

███████████████. (56.1 ¶ 6(h), 6(i), 71, Linthicum Dept. 212:12-13, █████). Plaintiffs had to go to a central warehouse five days per week to pick up product, deliver product and return to the warehouse to return stale product same as when they were employees. (e.g., Schucker Dep. 208:15-209:16, Valdez Dep. 38:19-39:15, █████). The Agreement gave Defendants unilateral control over all aspects of the employment relationship. (████ █ ███████████ ██████████████████). On the other days, Wednesday and Sunday, Plaintiffs went to the

---

[22] Deft. Brief at 10-11.

[23] Due to all of these restrictions, Plaintiffs all felt like employees and no independent contractors. (56.1 & 3, 5, 11, 14, 15).

12

stores where Defendants required service to merchandise the shelves.  (*e.g.,* Schucker Dep.

310:14-311:12, 316:5-16, Valdez Dep. 99:3-23, 146:5-147:9, ████ Plaintiffs could not ███

███████████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████████.

(56.1 ¶ 93(c)-(f), 94, 125, ████████, Linthicum Dep. 64:5-17).  Defendants unilaterally set the

█████████████████████████████████████████████████████████████

████████████████████.  Defendants could, and did, ███████████████████████

█████████████████.  (56.1 ¶ 211, ████████████████, ¶ 2.3, Linthicum Dep. 36:7-21, 37:7-

8, 60:8-16, 63:10-13, 64:2-18, 56.1 ¶ 38, 62, 63, 74, 123).  If these were the only areas of

control, summary judgment would be precluded.  However, Defendants' controls and restrictions

on Plaintiffs' independence did not end there.  Plaintiffs were also prohibited from ████████

████████████████████████████████████████████████████████████

████████████████████████████████████ ████████████████████████████

███████████████████████████████████.  (*e.g.,* 56.1 ¶ 6(j)).[26]  This was

not a realistic possibility based upon the workloads imposed by Defendants.[27]  (56.1 ¶ 6(h), 6(i),

71).  If Plaintiffs did not adhere to what Defendants dictated as "good industry practice," a

moving target of policies and practices, that included the mandatory service and merchandising

---

[24] Plaintiffs had no ███████████████████████████████████████████████

██████.  (56.1 & 3, Linthicum Dep. 124:15-16, 125:4-16, Valdez Dep.
63:15-25).

[25] This restriction is more indicative of employee status when combined with the non-durational terms of work.

[26] Defendants had the unilateral right ██████████████████████████████.  (Ex. 2, Agreement, & 2.3).
If a store Defendant wanted to do business with opened in a distributor's territory, █████████████

████████████████ (*e.g.,* Linthicum Dep. 60:8+16, 61:5-10, 128:16-129:4, Fryar Dep. 114:20-115:12, 151:6-16).  If

████████████████████████████████████████████████████████████

█████████████████████████████████████████ .[26] (Ex. 14).

[27] ████████████████████████████████████████████████████████

██████████████████████████████, 56.1 ¶ 28, 60, 69, Bower Dep. 78:16-24, 108:16-20, 110:4-9,
136:14-137:13, 149:9-151:2, Fryar Dep. 145:14-21).

schedule, they would receive disciplinary breach.[28] If Plaintiffs wanted to sell their routes,
Defendants retained the right of first refusal, and required them to sign a release of claims. (Ex.
2, Agreement, & 15.1, Ex. 21). All of these factors weigh overwhelmingly in favor of
employment status, making summary judgment improper.

    Defendants' paltry evidence in favor of independent contractor status while creative,
pales in comparison to the control and supervision they exercised over Plaintiffs. Defendants
attempt to cherry pick some of Plaintiffs' statements in depositions to attempt to convince this
Court that each Plaintiff ran an "independent" enterprise.[29] Their routes were different in sales
volume, store and composition only, although their chain stores had significant overlap. (e.g., Ex.
20). As a result, Plaintiffs did not have the same exact workload on the same days so each could
map the sequence in which to service the stores just as when they were employees. (56.1 ¶ 5, fn.
4, 38, 58, 59, 90). However, that slight discretion was within the tight controls dictated by
Defendants. (e.g., Ex. 10, 11). It was not possible for a Plaintiff to simply choose to take a day
off because of Defendants' service requirements. (Ex. 10). This does not meet the definition of
independent decision making. It was the same with product ordering. Defendants provided
Plaintiffs with suggested orders based upon historical data. (56.1 ¶ 38). Plaintiffs could and did
adjust those suggested product amounts to fit the current climate, taking into account the
weather, holidays and current sales.[30] (e.g., Ex. 13, Valdez Dep. 33:1-9). But, again, this degree
of minor discretion was dwarfed by the fact that Defendants required certain levels of product in
stores to be maintained through planograms that Plaintiffs had no ability to impact. Plaintiffs
had this same discretion when they were properly classified as Defendants' employees. (e.g.,

---

[28] Four Plaintiffs' finances were restricted due to these controls to the point that they sold back or surrendered
their routes. Only Valdez and Heinrich operate routes presently. (56.1 ¶ 15, 79, 81, 144, 182, 216).

[29] It is also respectfully submitted that Plaintiffs consider(ed) themselves to be hard-working and good at their
jobs so some of their statements in the deposition, parsed through by Defendants, must be taken in the proper
context, especially in light of the overwhelming objective evidence showing Defendants' vast control.

[30] Something they had to do since Plaintiffs were required to comply with all promotions, among other things.
(Ex. 2, Agreements, ¶ 13.2).

Ex. 9, Schucker Dep. 62:3-7, 56.1 ¶ 3, 5). Some Plaintiffs did need to enlist others from time to

time to service their routes. But their jobs were seven days per week job so it is utterly

ridiculous to contend that a distributor would not need help from time to time.[31]  As employees,

Plaintiffs were entitled to time off and another employee would cover the route. (Linthicum

Dep. 40:20-41:12, 101:1-7). The only difference is that now Plaintiffs were required to bear the

cost of coverage.[32] The economic reality is that Plaintiffs were not running "their" businesses.

They were working for Defendants. When viewing the totality of the circumstances, it is clear

that at the very least, there exist numerous disputes of material facts as to the issue of control

which precludes summary judgment.

### 2. Defendants Financed Plaintiffs' Business And Its Practices Suppressed Plaintiffs' Ability To Profit From The Enterprise

The next factor to examine  is the worker's opportunity for profit or loss and his

investment in the business. *Barfield,* 537 F.3d at 142–43. In this case, Plaintiffs were content to

be employees when they were informed they would be converted to independent contractors.[33]

Defendants required them to form corporations and, thus, Defendants created an artificial layer

between them and Plaintiffs. (Ex. 2, Agreement, ¶ 3.3). Plaintiffs did not have to invest any

capital because Defendants provided one-stop shopping for financing for the route and the

---

[31] Compare this requirement to the five days per week Plaintiffs worked as employees and which the company employees still work. (*e.g.,* Ex. 17, Valdez Dep. 33:1-9, 136:2-13 (Valdez lamented that employees worked five days per week and made more money)). Additionally, plaintiff Valdez' situation was an anomaly yet further demonstrates the sham Defendants created. He never wanted the territory Defendants insisted he obtain and he only agreed to take it because he would have lost his job otherwise. When plaintiff Schucker surrendered the territory Valdez originally wanted, Defendants would not allow him to sell his route back to Defendants and forced him to find an independent buyer, Valdez attempted  to find additional business for a few months while looking for a buyer without any success. (56.1 ¶ 15). Managers of large volume stores would not speak to him and he had to continue to perform his core duties which gave him no time to solicit small locations that did not produce much revenue anyway. (Id.).  Finally, he unloaded his first route and recommenced running his second route.

[32] Even Defendants admit that if a distributor hires someone to assist with his route, the distributor loses money. (Id., 41:9-12). Since the ability of Plaintiffs to obtain new business and grow their routes was negligible, assistants would lose them money. (*e.g.,* Shafer Dep. 160:21-161:6). Also, Plaintiffs' vacation schedules were subject to Defendants' approval in order to avail themselves of having the "right" to take vacation while paying Defendants $150.00 for one week of coverage and $350.00 for two weeks per year to run their routes. (Ex. 18, Schucker Dep. 168:14-19).

[33] Valdez, for example, asked Defendants if he could return as an employee. (Valdez Dep. 136:2-13).

vehicle required to service that route. (█████████████, ¶ 9.1, Linthicum Dep. 26:17-23). Plaintiffs continued to pick up the same products they delivered from Defendants' warehouse as employees.

In *Fernandez v. Kinray, Inc.* 2014 WL 7399303 at * 4, No. 13-cv-4938 (E.D.N.Y. Dec. 30, 2014), the Defendants' motion to dismiss was denied. The Court noted factors that weighed in favor of employment status were that the plaintiffs depended on defendants for work and payment and had no independent relationship with the customers to whom they made deliveries. *Id.* Additionally, the plaintiffs did not exercise independent initiative but "instead relied on the defendants' assignments and communications with customers." *Id.*

Here, Defendants' practices and controls clearly limited Plaintiffs' ability to make an unfettered living.[34] Plaintiffs were forced to purchase products from Defendants and if it sold before it became "stale," Plaintiffs did not have to sell it back to Defendants. (*e.g.,* ███████ On average, ███████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████, 56.1 ¶ 6(a), 7, 10). Because the shelf-life of the products is short and

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

███████████. (*e.g.,* Schucker Dep. 285:13-20, 286:5-21, 56.1 ¶ 11, 56, ███████). In short, the

---

[34] cf. *Arena, 2013 WL 654718 at * 12,* Plaintiff controlled how much overall money he earned as a result of the number of calls he took and fares he earned. See *Yellow Taxi Co. of Minneapolis v. N.L.R.B.,* 721 F.2d 366 (D.C.Cir.1983) (in evaluating employment under the National Labor Relations Act, "[w]hen a driver pays a fixed rental, regardless of his earnings on a particular day, and when he retains all the fares he collects without having to account to the company in any way, there is a strong inference that the cab company involved does not exert control over 'the means and manner' of his performance.") (quoting *Local 777, Democratic Union Organizing Committee, Seafarers Intern. Union of North America, AFL–CIO v. N.L.R.B.,* 603 F.2d 862, 879 (D.C.Cir.1978)); See also, *NLRB v. Associated Diamond Cabs,* 702 F.2d 912, 924 (11th Cir.1983) (that the company's profits are derived solely from the lease paid by the lessee and not the profits earned by the driver, favors independent contractor status) (citations omitted).

evidence is clear that Plaintiffs cannot expand this "business" to any real degree.[35]  Plaintiffs'

financial "risk" (versus lack of profit opportunities) is also limited in that ███████████████

███████████████████████████████████████████████████████████████████████████.

(Ex. 2, Agreements, ¶ 8.1).  The evidence demonstrates that issues of fact exist with regard to

this factor but the evidence weighs in favor of employee status.

### 3. Plaintiffs' Work Did Not Require Special Skill Or Initiative

The third factor Courts examine is the degree of skill or independent initiative required to

perform the work. Plaintiffs are surely correct that driving is not a "specialized skill," a

conclusion reinforced by the fact that drivers were not required to demonstrate any level of

knowledge upon commencing work for the Defendants. *See Campos v. Zopounidis,* 2011 WL

2971298, at * 7 (D. Conn. July 20, 2011 (finding "no evidence that [the plaintiff's] job as a

delivery person required him to possess any particular degree of skill," and that the plaintiff "did

not need education or experience to perform his job"); *Gustafson v. Bell Atl. Corp.,* 171

F.Supp.2d 311, 326 (S.D.N.Y. 2001)(There is no genuine dispute that plaintiff's duties as a

chauffeur required no specialized skill or initiative, suggesting that plaintiff was an employee);

*Brock,* 840 F.2d at 1060-61 (finding nurses were employees even though highly-specialized

because "the fact that workers are skilled is not itself indicative of independent contractor

status")

Here, Defendants do not ███████████████████████████████████████████

███████████████████████████).  Additionally, if Plaintiffs do enlist help with their routes, they

train the help.  In fact, two Plaintiffs used their children to assist them.  (56.1, ¶ 155-158, 192,

---

[35] The Court in *Fernandez* found that the defendants' reliance on *Browning* to be misplaced. While ***Browning*** involved delivery drivers, those drivers signed independent contractor agreements, could reject or accept dispatches offered by defendant, decided the days and times they would work and chose the routes they would travel, were paid on a fee-per-delivery rather than an hourly basis, and were free to offer delivery services to others. 885 F.Supp.2d 590 at 593–94.  None of those factors exist here and ███████████████████████████.

193). Plaintiffs go to a warehouse, sort loads of bread, drive to stores, deliver the bread and pull out old product and then return to the warehouse. They need to know how to drive and follow directions. These are the same duties they performed as employees. (56.1, ¶ 5). When Plaintiffs enlist help from time to time, they are able to quickly train people to cover. Therefore, Plaintiffs have no special skills and this factor weighs in favor of employee status.

### 4. The Employment Relationship Was Full-Time And Open-Ended In Duration

The relationship between the parties here was ██████████████████████████
████████████████████████████████████████████████████████████████
they are employees.[36] (e.g., Linthicum Dep. 204:20-205:14, ████████████, ¶ 20.6). In *Kinney v. Artist & Brand Agency, LLC*, 2015 WL 10714080 * at 16 (S.D.N.Y. Nov. 25, 2015) this Court denied summary judgment where the defendants did not deny that the plaintiff worked for them on a full-time basis. This Court opined that while this factor did not directly impact the issue of the "duration" of the parties' association or its "permanence," it is arguably a related consideration, as an exclusive, full-time work relationship is less likely to be transient or limited in scope. *Id. See, Ethelberth v. Choice Sec. Co.*, 91 F.Supp.3d 339, 351–52 (E.D.N.Y. 2015) (finding that this factor weighed in favor of employee status where plaintiff worked for defendant "on essentially a full-time basis" for a three-year period); *Schwind v. EW & Associates, Inc.*, 357 F.Supp.2d 691, 702 (S.D.N.Y. 2005)(determining that permanence or duration of the relationship weighed in favor of employee status where the plaintiff "worked exclusively for defendants for approximately four years").

In the present case, Plaintiffs had open-ended, full-time jobs. (████████████). Two Plaintiffs have been working for Defendants under the same agreements since Defendants

---

[36] For example, Heinrich and Valdez still work for Defendants.

18

transitioned them to distributors. These jobs were not sporadic, intermittent or short in duration. Therefore, this factor weighs heavily in favor of employment status.

### 5. Plaintiffs' Work Is Integral To The Survival Of Defendants' Business

Finally, the Court must examine Plaintiffs' importance to Defendants' business. Quite simply, there is no Defendants' bakery distribution business without Plaintiffs. Even Defendants do not deny this prong in their brief and cannot plausibly argue otherwise.[37] (Linthicum Dep. 202: 14 – 22)(Defendants' success is dependent on Plaintiffs' success). Therefore, this prong clearly supports employee status. The evidence clearly demonstrates that all factors under the "economic realities test" weigh in favor of Plaintiffs being employees and as such, summary judgment is improper.

### B. Plaintiffs Were Intentionally Misclassified Employees Under NYLL

Plaintiffs are employees when analyzed under the substantially similar standard under the New York Labor Law ("NYLL").[38] The terms "employee" and "employer" are included in the definitions section of the NYLL, but those definitions are tautological. *See* N.Y. Lab. Law §§ 190(3) (defining employee as "any person employed for hire by an employer in any employment"), 190(4) (defining employer as "any person, corporation, limited liability company, or association employing any individual in any occupation, trade, business or service"). Therefore, New York courts apply a common law test focused on "the degree of control exercised by the purported employer over the results produced or the means used to achieve the results." *Bynog v. Cipriani Grp., Inc.*, 1 N.Y.3d 193, 198 (2003); See, *Matter of Ted Is Back*

---

[37] (Deft. Br. p. 18).

[38] *See, e.g., Kinney*, 2015 WL 10714080 * at 15 (While the relevant test is stated differently under the NYLL, courts generally afford the FLSA and NYLL consistent interpretations with respect to the question of whether a worker was an employee or an independent contractor. , *see also, Hart*, 967 F.Supp.2d at 924. Moreover, "[t]here is general support for giving [the] FLSA and the [NYLL] consistent interpretations," *id* quoting *Topo v. Dhir*, No. 01 Civ. 10881(PKC), 2004 WL 527051, at *3 (S.D.N.Y. Mar. 16, 2004)), and, accordingly, "there appears to have never been a case in which a worker was held to be an employee for purposes of the FLSA but not the NYLL (or vice versa)." Id.

*Corp.*, 64 N.Y.2d 725, 726 (1984) (noting that "control over the means is the more important

factor to be considered"). Determining whether a given worker is an employee under New York

common law is a fact-intensive inquiry, and it does not depend on how the parties have labeled

themselves. *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 924 (S.D.N.Y. 2013) ("[I]t is

not significant how the parties defined the employment relationship or how the worker identified

herself on tax forms.").

A determination of whether a worker qualifies as an employee under the NYLL depends

upon factors such as whether he or she "(1) worked at his [or her] own convenience, (2) was free

to engage in other employment, (3) received fringe benefits, (4) was on the employer's payroll,

and (5) was on a fixed schedule." *Deboissiere v. Am. Modification Agency*, No. 09–CV–2316

(JS)(MLO), 2010 WL 4340642 (E.D.N.Y. Oct. 22, 2010) (citing *Bynog*, 1 N.Y.3d AT 198), and

*Velu v. Velocity Exp., Inc.*, 666 F.Supp.2d 300, 307–08 (E.D.N.Y. 2009)).[39] The analysis focuses

on "the degree of control exercised by the purported employer over the results produced or the

means used to achieve the results." *Bynog*, 1 N.Y.3d at 198.

Here, Defendants' practices demonstrate that this was an employer-employee relationship

despite their attempt to shield themselves with a self-serving and oppressive agreement. New

York has recognized that agreements such as the agreement here, which seek to preclude

employer-employee relationships, particularly where drivers and deliverymen are involved, have

become commonplace.[40] See, *In the matter of Matter of Pepsi Cola Buffalo Bottling*

---

[39] *See Murphy v. ERA United Realty*, 251 A.D.2d 469, 470–71, 674 N.Y.S.2d 415 (2d Dep't 1998) (considering factors including requirement that worker wear the company uniform, follow company procedures, attend mandatory meetings, sign in and out of the office, and coordinate vacation time with supervisor); *E. Coast Indus., Inc. v. Becconsall*, 60 Misc.2d 84, 301 N.Y.S.2d 778, 779–80 (N.Y.Dist.Ct.1969) (factors important in evaluating control included the employer's authority to decide the timing and selection of each job and employer's right to discharge or fire the employee)

[40] In New York, for purposes of unemployment as promulgated under the rules and regulations governing the Department of Taxation and Finance, the definition of "employment" encompasses "any servce under any contract of employment for hire, express or implied...includes (1) agent or commission drivers engaged in delivering...bakery products..." 20 NYCRR § 2380.3(b)(1). This provision alone demonstrates summary judgment is improper and, to the contrary, establishes Plaintiffs as employees as a matter of law.

*Corporation*, 144 A.D.2d 220, 534 N.Y.S.2d 532 (3d Dept. 1988).  In upholding findings of the

unemployment insurance Board that the plaintiff driver was an employee, the court stated:

> Written distributorship or franchise agreements which seek to preclude employer-
> employee relationships, particularly where drivers and delivery men are involved, have
> become commonplace.  However, language in an agreement to the contrary
> notwithstanding, if the evidence establishes that sufficient supervision, direction and
> control is exercised over the drivers, an employ-employee relationship must be found.

The court held: "There is nothing in this record to suggest that did not implement its authority

under this agreement or that the agreement did not outline the actual relationship between the

parties...the record substantiates the Board's finding of an employment relationship." *(see,*

*Matter of Oakes [Stroehman Bakeries--Roberts]*.[41]

Courts have held that language in an agreement to the contrary notwithstanding, if the

evidence establishes that sufficient supervision, direction and control is exercised over the

drivers, an employer-employee relationship may be found *(Matter of Rivera [State Line Delivery*

*Serv.--Roberts]*, 69 NY2d 679, *cert denied* 481 US 1049; *Matter of Oakes [Stroehman Bakeries-*

*- Roberts]*, 137 AD2d 927). The existence of an employment relationship presents a question of

fact for the Board to resolve, and while no single factor is determinative, control over the means

used to achieve the desired result is particularly significant *Matter of Field Delivery Serv.*

*[Roberts]*, 66 NY2d 516, 521.

Here, as set forth at length, Defendants retained significant and, often, unilateral control

over the means used to achieve the desired result, which ultimately is the sale of bakery products.

---

[41] Even where an employer labels its workers as independent contractors, courts have routinely found an
employer-employee relationship to exist. *See, e.g., In re Claim of Kelly*, 28 A.D.3d 1044, 1045 (3d Dep't 2006); *In
re Pepsi Cola Bottling Corp.*, 144 A.D.2d at 222; *In re Claim of Schaimberg*; 285 A.D.359, 361 (3d Dep't 1955).
Indeed, "[a]n employer's characterization of an employee is not controlling, for otherwise there could be no
enforcement of any minimum wage or overtime law." *Ansoumana v. Gristede's Operating Corp.*, 255 F. Supp. 2d
184, 190 (S.D.N.Y. 2003); The question of whether Plaintiffs are employees or independent contractors is "typically
a question for the factfinder unless the evidence in the record relevant to this question is undisputed, in which case a
court may resolve the issue as a matter of law." *Perfect Dental, PLLC v. Allstate Ins. Co.*, 538 F. Supp. 2d 543, 548
(E.D.N.Y. 2007). Here, this clearly is not the case.

(e.g., Ex. 9-16, 18).  The record demonstrates that at a bare minimum, questions of fact remain
which preclude summary judgment.

> **1.    Plaintiffs Could Not Work At Their Convenience And Defendants
> Required Them To Work Seven Days Per Week And Were Subjected
> To Defendants' Work Schedule Requirements**

Plaintiffs were unable to work at their convenience since their mandated schedules were
seven days per week, comprising five set delivery days and two days earmarked for primarily
merchandising and some delivery.  (eg., ███████ ███ [42]), Defendants attempt to portray Plaintiffs
as independent fails because when the evidence is viewed in totality, those areas of alleged
independence show Plaintiffs only had limited discretion in any area.  Being able to decide the
exact order to service their stores based upon common sense geography and adjust product
orders based on current factors were part of their job description as employees. (56.1 ¶ 58, 59,
62, 89-91, 94-96, 98, 118). Defendants imposed strict service requirements upon Plaintiffs.  (56.1
¶ 6(h), 34, 36, 56, 71, 90, 120, ████).  Therefore, this factor weighs strongly towards employee
status.  Additionally, ████████████████████████████████████████████████
███████████. Defendant also would threaten Plaintiffs ██████████████████████
██████████████████████████████████████████████████████ 56.1 ¶ 3,
36, 37, 56, 58-61, 89-91, 93(a)-(f), 118, 120, 121, 161-162, 172, 195-197).  As such, there is no
question Plaintiffs were unable to work at their own convenience.

> **2.    Plaintiffs Were Unable To Engage in Other Work**

In addition to the factors just discussed, Plaintiffs were ██████████████████
████████████████████████████████████████████████████████████████
████████████████████████ 5.1, 20.8).  Further, this ████████████████

---

[42] Among the documents in this exhibit is an email to Schucker directing him to ████████████
████████████████████████████████████████████████████████████
████████████████████████

22

███████████████████████████████████. Id. While the agreement allows

Plaintiffs to carry non-competitive products, that concept is laughable. Plaintiffs all have full-

time jobs for Defendants that start early in the morning and encompass sixty to seventy hours per

week. (56.1, ¶ 6(h)(i), Schucker Dep. 182:10-183:19, ██████████████████████

███████████████████████████████████ They have no

opportunity to obtain other work ██████████████████████████████████

███████████████████████████ Id. As such, the record demonstrates that

Plaintiffs are not able to engage in other work which, when taken with the other facts adduced

herein, demonstrates employee status.

### 3. Plaintiffs Were Not On Defendants' Payroll And Did Not Receive Benefits But Only Because Defendants Insisted On The Intentional Misclassification

While it is true that Plaintiffs were not on Defendants' payroll, this is one of the core

reasons that Defendants created this "independent contractor" scheme. Plaintiffs did not seek out

this "opportunity", it was thrust upon them. In this inquiry, as is the case under the FLSA, it is

not significant how the parties defined the relationship or how the worker identified himself on

tax forms. See *Sandrino v. Michaelson Assocs., LLC*, No. 10 Civ. 7897 (BSJ), 2012 WL

5851135 (S.D.N.Y. Nov. 19, 2012). (The test for whether a person is deemed to be an

independent contractor of NYLL does not depend on what the person has labeled themselves.

Instead, the analysis is a question of fact which hinges on whether the employer exercises control

over the results produced or over the means used to achieve the results). In the present case,

Plaintiffs were working as employees when Defendants imposed an ultimatum to become

independent contractors or lose your livelihoods. (56.1 ¶ 3). In *Hart v. Rick's Cabaret Intern.,*

*Inc.,* 967 F.Supp.2d 901 (S.D.N.Y. 2013), this Court held exotic dancers to be employees. This

Court did so despite the evidence showing that Plaintiffs were free to take other jobs. Id. at 925,

23

("Many workers who are undeniably employees under NYLL, such as waiters or bartenders, are free to carry second jobs").[43] This Court further found that "the lack of fringe benefits or payroll inclusion is likewise unimportant and that the dancers did not receive benefits or W-2's because defendants treated them as independent contractors. The Court did not assign these factors much weight because that would effectively allow any employer to control a worker's status by simply labeling them independent contractors and denying them employee benefits. Id.[44]

In sum, Defendants' substantial controls alone precludes summary judgment.

## V.   PLAINTIFFS WERE NOT EXEMPT FROM OVERTIME REQUIREMENTS

### A.   Plaintiffs Are Not Exempt Under The Motor Carrier Exemption

Defendants cannot win summary judgment under the MCA exemptions under which they attempt to fit Plaintiffs.[45] Exceptions to the FLSA "are to be narrowly construed against the employers seeking to assert them." *Bilyou v. Dutchess Beer Distribs., Inc.*, 300 F.3d 212, 229 (2d Cir. 2002). Here, there is a material dispute whether Plaintiffs engaged in interstate commerce, given that they only transport products within New York. Then, even if they are found to have engaged in interstate commerce, Plaintiffs fall within the exception created by the Technical Corrections Act of 2008 ("TCA"). While the interstate commerce requirement is satisfied if the transported goods within a state are involved in a practical continuity of movement in the flow of interstate commerce, (*Hamilton v. Newburgh-Beacon Bus Corp.*, 2014 WL 7398908 (S.D.N.Y. Dec. 4, 2014)), the MCA exemption does not apply where items are delivered from out of state to an in-state location, such as a warehouse, for future deliveries to

---

[43] As discussed *supra*, Plaintiffs were restricted in this aspect by Defendants' controls.

[44] This Court further opined that employee status turns on substance, not form. Id. See also in *re Hertz Corp.*, 2 N.Y.3d 733, 735 ("An employer-employee relationship exists when the evidence demonstrated that the employer exercises control over the results produced by [plaintiff] or the means used to achieve the results"). As was the case in *Hart*, here Defendants' control over Plaintiffs was for more than incidental. (Id. at 926).

[45] As Defendants note, the NYLL incorporates FLSA exemptions, which further supports this Court granting Plaintiffs' outstanding request to amend the complaint to add a Rule 23 statewide class since the discovery necessary under the Federal and state law is identical.

yet unidentified customers. *Masson v. Ecolab, Inc.*, 2005 WL 2000133 (S.D.N.Y. Aug. 17, 2005).

Here, ███████████████████████████████████████ █ ████
████████████████████████████████ (Linthicum Dep. 9:2-19);
(Shucker Dep. 208 – 209:15 – 16); (Heinrich Dep. 151:2 – 19, 230:14 – 24, 231:17 – 25, 268 – 271). Thus, the question of whether Plaintiffs engage in interstate commerce cannot be decided as a matter of law.

The MCA exemption is also not applicable to Plaintiffs because they are covered employees as defined under TCA §306(c).[46] Moreover, on non-delivery days, which were two days per week, Plaintiffs performed their job duties using their own personal vehicles that weighed less than 10,000 pounds. (Valdez Dep. 146 – 147:5 – 9); (Bower Dep. 231 – 232:15 – 12, 233 – 234:16 – 18, 242:19 – 23); (Heinrich Dep. 104:10 – 17); (Fryar Dep. 256 – 258:15 – 10), (Shafer Dep. 189:8 – 25). This Circuit has definitively held that individuals such as Plaintiffs qualify for overtime compensation because they are covered employees under the TCA. *Hernandez v. Alpine Logistics, LLC*, No. 08-cv-6254T 2011 WL 3800031 at *5 (S.D.N.Y. Aug. 29, 2011). There, the court stated that even in weeks where employees worked on vehicles weighing more than 10,000 pounds (and thus were subject to Department of Transportation regulations), those employees would still be entitled to overtime if they worked on vehicles weighing less than 10,000 pounds (non-commercial vehicles), for a at least part of the week. Defendants' reliance on *Garcia v. W. Waste Servs.*, Inc. 969 F.Supp.2d 1252 (D. Idaho 2013) is misplaced. There the court denied summary judgment to defendants where is found that a mechanic who worked on small vehicles for a *de minimis* portion of his time qualified under the

---

[46] The TCA expressly amended the FLSA by providing that overtime compensation would be available to "covered employees" despite the provisions of the MCA. (P.L. 110-244 ' 306(A)). Specifically, a "covered employee" employed by a motor carrier…whose work, in whole or in part, is defined … who performs duties on motor vehicles weighing 10,000 pounds or less. (P.L. 110-244 ' 306(C)).

TCA exception. Id. at 1260. However, the court did not find that his driving duties could qualify as interstate commerce vehicles. While they did not go to a warehouse, plaintiffs delivered product and performed other duties that created factual disputes as to the application of the TCA. Thus, summary judgment should be denied. As such, Defendants cannot prevail on a motion for summary judgment and, to the contrary, Plaintiffs have a basis to dismiss the defense as a matter of law.

### B. Plaintiff Valdez Did Not Meet The Requirements Of The Outside Sales Exemption From June 2015 to January 2016

Defendants also cannot prevail against Valdez as he was not an outside salesperson for the six month period in question.[47] To the contrary, his story demonstrates that the "sales" aspect of Plaintiffs' "business" was a sham and a cover to mask the illegal misclassification. An "outside salesman" is an employee whose primary duty is (i) making sales... and (2) [w]ho is customarily and regularly engaged away from an employer's place of business in performing such primary duty." 29 C.F.R. 541.500(a). Here, even for that brief period of time, Valdez's primary duty was never sales. (56.1, ¶ 28). Valdez continued to service his stores, performing all of his core duties. He failed in any attempts to grow his business because of the continued control Defendants exercised over him. (56.1 ¶ 15, 28). All he could try to do in the chain stores (that comprised the majority of his territory) was to ask for more displays, which was also unsuccessful since Defendants were the ones the stores would negotiate with. Id. Thus, Defendants are the salespeople here, not Plaintiffs. Further, Defendants did not have any requirement that distributors have sales experience (████████). Numerous questions of fact exist which precludes summary judgment.

---

[47] Valdez had two territories for a period of time while he was trying to find a buyer for his first route that he never wanted and which Defendants would not take back. He never focused exclusively on sales and it is only a period of six months where he used employees to run both routes. During that time, he continued to perform many of his usual activities and went to each stop in his route and his primary role was never sales. (Valdez Dep. 90-93).

### C. Plaintiffs Will Prevail On Their New York Labor Law Claim For Unlawful Deductions

Plaintiffs' claim for unlawful deductions should survive because they have demonstrated they are employees under NYLL. "Employee" is defined nearly identically (and with equal circularity) in the FLSA and NYLL. *Compare* 29 U.S.C.A. § 203(e)(1) ("[T]he term 'employee' means any individual employed by an employer."), *with* NY Lab. Law § 190(2) ( " 'Employee' means any person employed for hire by an employer in any employment."). "Employer" is also defined similarly in the two statutes. *Compare* 29 U.S.C.A. § 203(d) (" 'Employer' includes any person acting directly or indirectly in the interest of an employer in relation to an employee ...."), *with* N.Y. Lab. Law § 190(3) (" 'Employer' includes any person, corporation, limited liability company, or association employing any individual in any occupation, industry, trade, business or service."). If the Court agrees that Plaintiffs have made a showing that they are employees, Plaintiffs should prevail on this claim and summary judgment should be denied.

### D. Questions Of Fact Preclude Summary Judgment In Defendants' Favor On Plaintiffs' ERISA Claims

Defendants' arguments for summary judgment on Plaintiffs' ERISA-based claims (Dkt. 98 at 26-27) largely re-hash, in perfunctory fashion, the same arguments already made and rejected by the Court in Defendants' prior motion to dismiss. (*See, e.g.*, Dkt. 51, 69, 91). For the same reasons set forth in Plaintiffs' opposition to that motion (and incorporated herein by reference), (Dkt. 62), as well as those set forth below, Defendants' motion for summary judgment should be denied as to the ERISA claims.

First, Defendants contend that Plaintiffs have not met the eligibility criteria under the applicable employee benefits plan(s) in dispute. However, Defendants do not identify the plan or the criteria that Plaintiffs supposedly do not meet. That Plaintiffs supposedly did not ever meet the eligibility criteria is a mere assertion by the Defendants, lacking any citation or reference to

27

the record. In fact, the record demonstrates that Plaintiffs qualify as "Leased Employees" under Defendant Flowers Foods' 401(k) retirement plan. (Dkts. 63-8).

Under that Plan, "Leased Employees" are considered Employees and thus potentially eligible for benefits. (Dkt. 63-1, Section 1.31).

Second, Defendants assert that Plaintiffs' ERISA claims are barred because they failed to exhaust administrative remedies. Notably, Defendants do not identify what administrative remedies (if any) existed whereby Plaintiffs could have sought relief. The existence of a viable administrative remedy is a pre-requisite for requiring exhaustion of such remedies. *See, e.g., Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013) ("Implicit in the exhaustion requirement is the condition that a plaintiff must have an administrative remedy to exhaust."); *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 594 (2d Cir. 1993) ("[e]xhaustion in the context of ERISA requires only those administrative appeals provided for in the relevant plan or policy."). Stated simply, if there was no administrative procedure through which Plaintiffs could address their misclassification and resulting denial of benefits, then they were under no obligation to exhaust a non-existent remedy before bringing suit. As Defendants cannot point to any administrative procedure available to Plaintiffs to address their grievances, it is an open factual question whether such a remedy existed at all, and thus whether exhaustion was even required in this case.[48] The Court cannot grant summary judgment to Defendants under these circumstances.

Further, the law does not require an ERISA plaintiff to pursue administrative remedies prior to bringing suit if doing so would have been futile. *See, e.g., Kennedy*, 989 F.2d at 594-95; *DePace v. Matsushita Elec. Corp. of Am.*, 257 F. Supp. 2d 543, 560 (E.D.N.Y. 2003). Exemption from exhaustion requires a "clear and positive showing" that pursuing administrative

---

[48] Defendant should not be allowed to cure these material defects in a reply, as "[it is established beyond peradventure that it is improper to sandbag one's opponent by raising new matter in reply." *Wolters Kluwer Fin. Services, Inc. v. Scinatage*, 2007 WL 1098714 at *1 (S.D.N.Y. April 12, 2007) (compiling cases).

remedies would have been futile. *Kennedy*, 989 F.2d at 594. Here, Defendant has put in a Declaration of the individual in charge of benefit plans who has stated under oath that she contends the Plans are only for ""active employees" who are "persons newly hired on or after October 2013" thus demonstrating the futility of pursuit of such remedy. See Decl. of Karen Hickey, dated Dec. 9, 2016 (Dkt. 52) at ¶4.

Finally, Defendants' contention that Plaintiffs waived their right to participate in employee benefits plans in the Distribution Agreements is refuted as the record clearly shows that Plaintiffs were forced to sign non-negotiable contracts under significant economic duress imposed by defendants, making the Distribution Agreements almost textbook examples of contracts of adhesion. *See, e.g., Klos v. Polskie Linie Lotnicze*, 133 F.3d 164, 168 (2d Cir. 1997) ("Typical contracts of adhesion are standard-form contracts offered by large, economically powerful corporations to unrepresented, uneducated, and needy individuals on a take-it-or-leave-it basis, with no opportunity to change the contract's terms."). Unconscionable contracts of adhesion are not enforceable under the law. *See, e.g., In re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237, 250 (S.D.N.Y. 2005); *Brennan v. Bally Total Fitness*, 153 F. Supp. 2d 408, 416 (S.D.N.Y. 2001). Issues of fact relating to the procedural and substantive unconscionability of the contract exists here.[49]

Beyond the mere wrongful denial of ERISA benefits, Plaintiffs also have a statutory claim under Sec. 510 of ERISA, 29 U.S.C. § 1140, which prohibits administration of an

---

[49] As a general rule, participation in an ERISA employee benefits plan may be waived, provided that the waiver is knowing and voluntary. *Laniok v. Advisory Comm. of Brainerd Mfg. Co. Pension Plan*, 935 F.2d 1360, 1365-66 (2d Cir. 1991). The best summary of the Second Circuit's thinking on waiver is found in *Krackow v. Jack Kern Profit Sharing Plan*, 2002 U.S. Dist. LEXIS 20524, at *13 (E.D.N.Y. May 29, 2002), which stated:
    Although an employee's agreement with an employer to waive benefits under an ERISA plan . . ., "ERISA waivers require closer scrutiny by the district court than waivers of general contract claims." *Yak v. Bank Brussels Lambert*, 252 F.3d 127, 131 (2d Cir. 2001). A waiver of benefits under ERISA will be sustained only upon the court's finding, after close inspection of the totality of circumstances surrounding the waiver, that it was knowingly and voluntarily made. *Sharkey v. Ultramar Energy Ltd.*, 70 F.3d 226, 231 (2d Cir. 1995); *Finz v. Schlesinger*, 957 F.2d 78, 81-82 (2d Cir. 1992).

employee benefits plan in a discriminatory fashion.   Reclassification of employees as independent contractors, when done with specific intent to interfere with the employees' future ERISA benefits, violates Section 510. *Gitlitz v. Compagnie Nationale Air Fr.*, 129 F.3d 554, 559 (11th Cir. 1997); *Seaman v. Arvida Realty Sales*, 985 F.2d 543, 547 (11th Cir. 1993). A claim for violation of the ERISA statute does not require Exaustion of administrative remedies. *See, e.g., Zipf v. Am. Tel. & Tel. Co.*, 799 F.2d 889, 893 (3d Cir. 1986); *see also Berger v. AXA Network, L.L.C.*, No. 03 C 125, 2003 U.S. Dist. LEXIS 11555, at *8-9 (N.D. Ill. July 3, 2003) (alleged violation of Sec. 510 of ERISA based on reclassification does not require Exaustion of administrative remedies prior to suit). Thus, even if the Court finds that Plaintiffs' claims for wrongful denial of benefits are barred by failure to Exaust administrative remedies, Plaintiffs have a viable ERISA claim for violation of Sec. 510.

### E. Plaintiffs Can Demonstrate Unjust Enrichment And The Releases Some Plaintiffs Signed Are Not Binding And Contrary To Public Policy

The invalid contract misclassifying Plaintiffs as independent contractors does not preclude Plaintiffs' unjust enrichment claim.[50]  While the existence of a valid and enforceable contract governing a particular subject matter ordinarily precludes recovery for events arising out of the same subject matter, where there is a bona fide dispute as to the existence of a valid contract plaintiff may proceed with a claim for unjust enrichment. *Robinson v. Day*, 103 A.D.3d 584, 586-587 (1st Dep't 2013) *citing IIG Capital, LLC v. Archipelago*, LLC 36 A.D.3d 401, 404-405, (1st Dep't 2007). As noted above, the contract Plaintiffs entered into was fraudulent, illusory and a bona fide dispute exists as to the validity of such contract. Accordingly, Plaintiff's unjust enrichment claim should be allowed to proceed since this is a valid path to recovery.

Defendants' assertion that some of the Plaintiffs waived their statutory rights through a

---

[50] Plaintiffs acknowledge that they would not be entitled to double recovery of wages that were unjustly and illegally deducted from their wages, but assert their claim for unjust enrichment as an alternate theory to cover such amounts.

general release prepared by Defendants also fails.[51]  It is well established that waivers are

disfavored at law and closely scrutinized by courts.  (*e.g., Bd of Ed of Hudson City School Dist.*

*v. Sargent, Webster, Crenshaw & Folley,* 146 A.D.2d 190, 196, [3d Dep't 1989].)  Statutory

FLSA rights "cannot be abridged by contract or otherwise waived because this would 'nullify the

purposes' of the statute and thwart the legislative policies it was designed to effectuate."  (*Lynn's*

*Food Stores, Inc. v. United States,* 679 F.2d 1350, 352 [11th Cir. 1982].)

    Any ambiguity under this release must be construed against the drafter.  (*e.g.,Gould*

*Investors, LP v. Travelers Cas. & Surety Co. of America,* 83 A.D.3d 660, 920 N.Y.S.2d 395 [2d

Dep't 2011].)  The exculpatory provision must be clear and unambiguous, and the one at bar is

insufficient.  (See, *e.g., Willard Van Dyke Productions, Inc. v. Eastman Kodak Co.,* 12 N.Y.2d

301, 304, 239 N.Y.S.2d 337 , 339-40[1963].)  The waiver in this case does not apply to the

individual.  It is ambiguous and does not specifically waive the claims asserted herein.  (Exh.

21).[52]  Here, it was forced upon Plaintiffs as a condition to sell their routes back to Defendants.

There was no arm's length negotiation between the parties.  There was contract of adhesion and

no independent consideration to support enforcement of the release.  (See, *e.g., Rosenthal v.*

*Bologna,* 211 A.D.2d 436, 438, 620 N.Y.S.2d 376, 378 [1st Dep't 1995].)

### F.  The Court Should Grant Plaintiffs' Motion To Amend The Pleadings

#### 1.  Fed. R. Civ. Proc. Rule 15 Is Liberally Considered And Should Apply To This Case

    The Court should grant Plaintiffs' motion to amend the pleadings because the liberal

standard should apply as Plaintiffs set forth in their original argument.  (Dkt. 94).  Alternatively,

---

[51] A plain reading of the Release reveals it is not applicable to this matter. The release is between Defendants and the corporate entity each Distributor signed and releases claims that arise from or relate to the Distribution Agreement. (Ex. 21).  The release does not affect any individual's statutory rights and, thus, this claim fails.

[52] Furthermore, the exculpation provision runs contrary to the strong legislative purpose in this State given the special relationship between employer and employee in which the public has an interest and, therefore, it should be held void as against public policy.  (*e.g., Gross v. Sweet, 49* N.Y.2d 102, 106, 424 N.Y.S.2d 365, 367 [1979].)

Plaintiffs have established good cause that supports granting of the motion.[53] Notably, all of the cases Defendants cite hold that "good cause" is only required if a scheduling deadline is missed by the requesting party.

Defendants selectively cite *Knoll, Inc. v. Moderno, Inc.*, 2012 WL 3613896 at *1 (S.D.N.Y. Aug. 22, 2012) in support of their good cause argument. They neglect to advise the Court and parties to the following sections of that case that refer to <u>court ordered deadlines</u>. *Id.* ("a schedule may only be modified only for good cause"). This Court further opined that "a movant must demonstrate that it has been diligent in its efforts to meet the deadlines imposed..." *Id.*, citing *Rambarran v. Mount Sinai Hosp.,* 2008 WL 850478 at *3 (S.D.N.Y. Mar. 28, 2008). Similarly, Defendants partially cite *Wilson v . Corelogic Saferent, LLC,* 2016 No. 14-cv-2477 (JPO) WL 482986 (S.D.N.Y. Feb. 8, 2016). In that case, the plaintiff had a court ordered deadline to file his amended complaint and filed his amendment <u>six months </u>after that deadline. *Id.* at 2. This Court held that the liberal standard of Rule 15(a) of the [FRCP] did not apply as a result of missing that deadline. *Id.*

Here, Plaintiffs did not violate any Court ordered deadline. The Defendants could have asked Plaintiffs to be subject to a deadline in the scheduling order. They did not. Therefore, the Court should apply the liberal standard and allow Plaintiffs to amend their Complaint.

### 2. Plaintiffs Have Good Cause For The Complaint To Be Amended Because The Claims Are Viable And There Has Not Been Any Undue Delay Or Prejudice

Plaintiffs can also meet the more stringent good cause standard under *Fed.R.Civ.P 16(b)*. The proposed amendment is not futile, Plaintiffs did not delay in seeking the amendment and there is no undue prejudice to Defendants.

---

[53] Defendants concede that if their summary judgment motion is denied, they would need to find other grounds under which to contest Plaintiffs request for amendment of the pleadings. (Deft. Br. at 30).

### 3. The Amendment Is Not Futile

The facts of the proposed amendment support Plaintiffs' claim that Defendants violated the Fair Play Act and are presumed to be employees under same. Defendants contend that the Fair Play Act does not "expressly" provide for a cause of action.  However, in *Padovano v. FedEx Ground Package System, Inc,,* 2016 WL 7056574 (W.D.N.Y. Dec. 5, 2016), in denying FedEx' motion to dismiss, the Court opined:

> FedEx Ground argues…[it did] not pay Plaintiffs directly but rather paid "the companies they drove for. In other words, because FedEx Ground paid J M Padovano Corp instead of Jeffrey Padovano himself, FedEx Ground did not compensate Jeffrey Padovano and the Fair Play Act does not apply to FedEx Ground. This argument is belied by the fact that the term "commercial goods transportation contractor" includes both general contractors and subcontractors, see <u>N.Y. Lab. Law § 862-a(2),</u> and also by common sense. If any business could avoid the Fair Play Act by simply classifying their workers as independent contractors and compensating them through corporations rather than paying them directly, the Fair Play Act would be rendered useless."

*See also, In the Matter of Barrier Window Systems, Inc.* 149 A.D.3d 1373 (3d Dept. 2017)(substantial evidence support Board's determination that the statutory presumption of employment relationship under Fair Play Act applied to supplier). The same factual analysis exists here.  Defendants' required the individual plaintiffs to form corporations and hold at least a 51% interest in the same as a condition of becoming distributors.  (⬛⬛⬛⬛⬛⬛ ¶3.3). This was all part of Defendants' scheme to attempt to tip the financial scales of this relationship in their favor. Defendants' position is unavailing and Plaintiffs' request should be granted.

### 4. There Has Been No Undue Delay In Seeking Leave To Amend And Defendants Are Not Prejudiced By The Amendment

#### A. There Has Been No Undue Delay

Plaintiffs have not delayed in seeking leave to amend the pleadings.  Defendants argue that Plaintiffs were previously aware of the facts underlying the proposed amendment. However, simply alleging that the plaintiff could have moved to amend earlier does not demonstrate undue delay. See *Dilworth v. Goldberg*, 914 F.Supp.2d 433, 460 (S.D.N.Y.2012) ("[T]he motion to

amend will not be denied by reason of plaintiffs' delay in alleging facts that were previously

within their knowledge" (footnote omitted)); see also *Margel v. E.G.L. Gem Lab Ltd.*, No. 04

Civ. 1514, 2010 WL 445192, at *11 (S.D.N.Y. Feb. 8, 2010) ("[T]he court may 'deny leave to

amend "where the motion is made after an inordinate delay, no satisfactory explanation is

offered for the delay, and the amendment would prejudice" other parties.' " (quoting *Grace v.*

*Rosenstock,* 228 F.3d 40, 53–54 (2d Cir.2000))).

     Here, Plaintiffs did not delay. Discovery only began being exchanged in January 2017.

Notice of intent to amend was provided merely three months later and the motion made in June

2017. As such, Defendants' position is unavailing and leave should be granted.

### B. There Is No Undue Prejudice To Defendants

     Defendants will not be unduly prejudiced by having the complaint amended. All of the

causes of action focus on the central question of whether Defendants improperly classified

Plaintiffs. The fact discovery in this area has already been completed. Defendants simply claim

that they would need to "explore the day-to-day- experiences… through depositions, document

requests…" (Motion at 33). To date, all six plaintiffs were deposed, with each deposition

averaging well over 300 pages. Plaintiffs have no further documents to provide that relate to the

core issue. All of the depositions focused on the day-to-day activities of Plaintiffs as the Exibits

to the motions demonstrate. This position is curious in that the core of Defendants' summary

judgment motion focuses on the alleged "differences" in Plaintiffs' job duties explored in detail.

*(See, e.g.,* Plaintiff and Defendant 56.1 Statements).

     Further, adding a class claim that would require some additional discovery is not an

adequate basis to deny the request to amend. See, *Doe v. Pataki,* 3 F.Supp.2d 456, 473-474

(S.D.N.Y. 1998)(granting leave to amend complaint to add a proposed additional class of

plaintiffs where defendants did no establish, among other things, undue delay or prejudice).

Here, the liberal amendment rule should apply. To the extent that the Court seeks to apply a good cause standard, Plaintiffs have demonstrated that they did not run afoul of any deadlines and did not delay whatsoever in seeking the Court's permission. And there is no undue prejudice to Defendants because even if some discovery is necessary, it does not rise to the level of being unduly prejudicial to Defendants.

## CONCLUSION

Based upon the foregoing the Court should grant Plaintiffs' application to amend the complaint and deny summary judgment to Defendants.

Dated: September 1, 2017                              Respectfully submitted,


                                                     *s/ Randy J. Perlmutter*
                                                     Randy J. Perlmutter, Esq.
                                                     KANTROWITZ, GOLDHAMER
                                                     & GRAIFMAN, P.C.
                                                     747 Chestnut Ridge Road, Suite 200
                                                     Chestnut Ridge, New York 10977
                                                     Tel: 845.356.2570
                                                     Fax: 845.356.4335
                                                     rperlmutter@kgglaw.com

                                                     *Attorneys for Plaintiffs*

35